CRAIG A. HARBAUGH (Bar No. 194309)
HARBAUGH LAW, PC
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Tel: (213) 986-8656
Email: craig@harbaugh.law

Attorney for Defendant
DEANDRE WILSON

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>v.<br><br>DURK BANKS, *et al*,<br>    *Defendant*. | No. 2:24-cr-621-MWF-3<br><br>DEFENDANT WILSON'S MOTION TO SEVER<br><br>Hearing Date: November 18, 2025<br><br>Hearing Time: 10:00 a.m.<br>Courtroom: 5A |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

  Defendant Deandre Wilson, by and through his counsel of record, Craig A. Harbaugh, hereby moves this Court for an order severing his trial from that of co-defendant Durk Banks and any other co-defendants whose trials are joined with Mr. Banks.

  This motion is made pursuant to Federal Rule of Criminal Procedure 14 on the ground that a joint trial will cause compelling and incurable prejudice to Mr. Wilson as a result of prejudicial spillover from extensive 'other acts' evidence noticed by the Government that overwhelmingly concerns Mr. Banks and other alleged actors and would not be admissible against Mr. Wilson if he were tried alone.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the Government's Initial Rule 404(b) Notice dated September 1, 2025, all files and records in this case, the authorities cited herein, and any further evidence and argument the Court may permit.

Respectfully submitted,

Dated: October 6, 2025        */s/ Craig A. Harbaugh*
                              CRAIG A. HARBAUGH
                              Attorney for Deandre Wilson

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................... 5

II.  BACKGROUND ..................................................................................... 5

    A.   Evidence Related to Banks' Rivalry with Tyquian Bowman ............ 6

    B.   Evidence Related To Banks Directing And Ordering Violence ....... 6

III. LEGAL STANDARD ............................................................................. 8

IV.  ARGUMENT ........................................................................................ 10

    A.  Mr. Wilson Disputes the Adequacy And Admissibility of the Government's Rule 404(b) Notice ............................................................ 10

    B.  The Government's 404(b) Case Against Mr. Banks Will Create Severe and Incurable Spillover Prejudice Against Mr. Wilson ................. 11

    C.  The Introduction Of Irrelevant, Inflammatory Evidence Against Mr. Wilson Would Significantly Undermine His Strong Defense ................... 12

    D.  Limiting Instructions Cannot Cure the Prejudice ................................ 12

    E.  Severance Is the Only Adequate Remedy ............................................ 13

V.   CONCLUSION ..................................................................................... 13

# **CASES**

CASES

*Kotteakos v. United States*, 328 U.S. 750, 774-775 (1946)..........................................8

*United States v. Bronco*, 597 F.2d 1300, 1302–03 (9th Cir. 1979)....................8, 11

*United States v. DeRosa*, 670 F.2d 889, 898 (9th Cir. 1982)...................................9

*United States v. DeRosa*, 670 F.2d 889, 898 (9th Cir. 1982)................................11

*United States v. Donaway*, 447 F.2d 940, 943 (9th Cir. 1971)...............................9

*United States v. Gallo*, 668 F. Supp. 736, 752–53 (E.D.N.Y. 1987)....................8

*United States v. Gallo*, 668 F. Supp. at 753 .........................................................11

*United States v. Baker*, 98 F.3d 330, 335 (8th Cir. 1996)......................................9

*United States v. Boone*, 437 F.3d 829, 837 (8th Cir. 2006)...................................9

*United States v. Breinig*, 70 F.3d 850, 852-53 (6th Cir. 1995)...............................9

*United States v. Innamorati*, 996 F.2d 456, 469 (1st Cir. 1993)............................9

*United States v. Praetorius*, 462 F. Supp. 924, 928 (E.D.N.Y. 1978) ..................11

*Zafiro v. United States*, 506 U.S. 534, 538 (1993)................................................8

RULES

Fed. R. Crim. P. 14(a).............................................................................................8

Fed. R. Crim. P. 8(b)...............................................................................................7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

At the outset, Deandre Wilson does not concede that the Government's notice is adequate under Rule 404(b), that the alleged acts are supported by competent evidence, survive a Rule 403 analysis, or that they are admissible against anyone in this case. Mr. Wilson will join Defendant Durk Banks' Motion In Limine To Exclude Government's Proposed FRE 404(B) Evidence (filed contemporaneously) and fully expects the Court to exclude this extraneous, highly inflammatory evidence.

But if the Court were to allow the Government to introduce this evidence, severance is the only way to protect Mr. Wilson's right to a fair trial. The Government's notice sets forth extensive, 'other acts' evidence almost entirely directed at co-defendant Durk Banks—allegations of violent retaliation, murder plots, paid bounties, and directives to 'hunt' rivals spanning multiple jurisdictions and years. By contrast, Mr. Wilson appears, if at all, only peripherally — included in two text threads reflecting general chatter around Mr. Banks's alleged feud and threats. In terms of both of severity and breadth, these allegations dwarf the current charges against Mr. Wilson. Mr. Wilson will be forced to devote extensive time and resources to defend against evidence that has almost nothing to do with him.

A curative instruction will not suffice. Given the extensive inflammatory evidence, there is a grave risk that the jury will determine Mr. Wilson's guilt, not based upon the evidence, but based upon alleged violent acts of someone else. There is no way to ameliorate the prejudice to Mr. Wilson. Severance is required.

## II. BACKGROUND

On September 1, 2025, the government served its Initial Rule 404(b) Notice, identifying a series of alleged prior acts it intends to introduce as evidence of "motive, intent, preparation, and plan" by co-defendant Durk Banks. *See* Declaration of Craig A. Harbaugh, Exhibit A. The notice overwhelmingly targets Mr. Banks, and nearly all of the Government's listed acts consist of alleged violent conduct, threats, or

admissions by Mr. Banks. Deandre Wilson is not identified in the bulk of these allegations, and where his name does appear, it is solely in connection with group text threads initiated and driven by Mr. Banks.

### A. Evidence Related to Banks' Rivalry with Tyquian Bowman

The notice first describes evidence of Mr. Banks' alleged efforts to exact revenge against Tyquian Bowman a.k.a. Quando Rondo, following the 2020 killing of Dayvon Bennett a.k.a. King Von. According to the government, it intends to introduce:

"Surveillance footage and witness testimony related to the murder of Bennett in Atlanta, Georgia on November 6, 2020";

"Surveillance footage and witness testimony related to the attempted murder of Bowman in Blackshear, Georgia on or about May 2, 2021";

Mr. Banks' lyrics and statements, such as his line in Who Want Smoke?: "They be on my page like 'Slide for Von', I know they trollin me", and his podcast interview remark: "For some reason I just don't see them comments no more… we here though, we different in the 'Raq"; and

Social media comments directed at Mr. Banks urging him to "slide for Von".

None of these allegations identify Mr. Wilson. The evidence relates exclusively to Mr. Banks' feud with Bowman and the public pressure on Mr. Banks, not to Mr. Wilson.

### B. Evidence Related to Banks Directing and Ordering Violence

The second category consists of a wide-ranging set of allegations claiming that Mr. Banks placed bounties or otherwise directed violence. Again, Mr. Banks is central to the Government's allegations; Mr. Wilson's name surfaces in only two text chains, and in each instance he is a participant but not the originator of any statement.

Stephon Mack Bounty (Jan. 27, 2022): The notice states the government will introduce text messages, surveillance footage, and forensic evidence linking

Mr. Banks to an alleged bounty for the killing of Mack. Mr. Wilson is not identified in connection with this incident.

April 2023 text chain (Munna Duke feud): The notice claims a group text between "defendant Banks and OTF members, including defendant Deandre Wilson, Antonio Jones a.k.a. Boonie Mo, and PW-1" reflected Mr. Banks' frustration that O-Block was not properly retaliating for Bennett's death. In the thread, Mr. Banks—not Mr. Wilson—declared: "I'm finna pipe it up." Boonie Mo responded with: "Blood it's green [emoji of car and green light] getting shit together now no phones." The government expects PW-1 to testify about purported follow-up plans involving others. Significantly, the government attributes no statement to Mr. Wilson in this exchange. His presence is merely noted as being on the text chain. There is no claim that Mr. Wilson agreed with, endorsed, or acted on Mr. Banks' statements.

April 2023 Instagram chain: Another text chain between "defendant Banks, defendant Wilson, Boonie Mo, and Devonshe Collier" allegedly shows Mr. Banks forwarding an Instagram message he sent to rival Richard Ramsey, stating: "I got them hunting you up ads better have 3 ski mask on." Mr. Wilson is not alleged to be the author of the threatening statement. His name appears only as a participant listed on the chain. The notice does not claim that Mr. Wilson commented on, endorsed, or even responded to Mr. Banks' message.

April 2023 Boonie Mo audio: A voice note allegedly conveying Mr. Banks' instructions regarding money and "sliders" (getaway cars). Mr. Wilson is not identified and there is no evidence he received the audio message.

Lyrics: The notice cites multiple lyrics by Mr. Banks, including "Ahh Haa" ("Smurk, slide slide slide. Don't respond to shit with Von… They droppin' locations, I'm gettin' it done"), "Rumors" ("I don't want no niggas who you catch, I want the one I paid for"), and "Scoom His Ass" ("Bounty hunter, he ready to crack that lil' bitch down to get her off"). These statements are attributed solely to Mr. Banks.

While the government labels these acts as relevant to show a laundry list of reasons under 404(b) related to Mr. Banks, it fails to identify statements or conduct by Mr. Wilson that would make the evidence admissible against him.

### III. LEGAL STANDARD

Federal Rule of Criminal Procedure 8(b) provides that an "indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Even when joinder of defendants in one indictment is permitted under Rule 8(b), however, "[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a); s*ee also Zafiro v. United States*, 506 U.S. 534, 538 (1993) ("Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government.").

In *Zafiro*, the Supreme Court held that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." 506 U.S. at 539:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Id. Kotteakos v. United States*, 328 U.S. 750, 774-775 (1946).

The Supreme Court has recognized the problem that joint conspiracy trials present in this regard:

> The trial of a conspiracy charge . . . is an especially difficult situation for the defendant. The hazard from loose application of rules of evidence is aggravated where the Government institutes mass trials. . . . A co-defendant in a conspiracy trial occupies an uneasy seat. There generally will be evidence of wrongdoing by somebody. It is

> difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together. If he is silent, he is taken to admit it and if, as often happens, codefendants can be prodded into accusing or contradicting each other, they convict each other.

*Krulewitch v. United States*, 336 U.S. 440, 453-54 (1949) (Jackson, J., concurring).

Evidence admissible solely against a co-defendant under Rules 401/404(b) that would be excluded under Rule 403 in a separate trial supports severance. *See United States v. Bronco*, 597 F.2d 1300, 1302–03 (9th Cir. 1979) (finding reversible error for failing to grant a severance where the 404(b) evidence would not have been admissible to the same extent in a separate trial); *United States v. Gallo*, c, 752–53 (E.D.N.Y. 1987) ("There would also be many instances where evidence admitted against one defendant would also be relevant as to another under Rule 401, but would be excluded as to the latter under Rule 403 in a separate trial of that defendant alone because its probative value would be outweighed by the danger of unfair prejudice."). The prejudice can be most devastating "where the crimes of some defendants are more horrific or better documented than the crimes of others." *United States v. Innamorati*, 996 F.2d 456, 469 (1st Cir. 1993); *see United States v. Baker*, 98 F.3d 330, 335 (8th Cir. 1996) (holding denial of severance reversible error due to extensive evidence against co-defendant that would not have been admissible in a separate trial); *United States v. Breinig*, 70 F.3d 850, 852-53 (6th Cir. 1995) (holding that the denial of severance constituted an abuse of discretion where ex-wife, charged with tax evasion jointly with her ex-husband, testified to his abusiveness and philandering).

In determining whether joinder is prejudicial, a court must consider whether the jurors have the capacity to "compartmentalize the evidence," and follow the trial court's instructions and appraise the guilt or innocence of each defendant based solely upon that defendant's own acts, statements and conduct, and the independent evidence against that defendant. *United States v. DeRosa*, 670 F.2d 889, 898 (9th Cir. 1982). The court must also consider "the complexity of the case, the total

weight of the evidence against each defendant, and the effectiveness of jury instructions." *Id*. Most critically, the court "must be wary of situations where a jury might impute the guilt of some defendants to other defendants." *Id*.; *United States v. Donaway*, 447 F.2d 940, 943 (9th Cir. 1971) (holding it was an abuse of discretion to deny severance finding "it impossible to conclude on the facts here that appellant was not severely prejudiced by the evidence relevant only to the co-defendants"). Severance is warranted precisely where "the jury cannot be expected to compartmentalize the evidence with respect to different defendants due to a 'prejudicial spillover effect' between the cases against them...." *United States v. Boone*, 437 F.3d 829, 837 (8th Cir. 2006) (internal citation omitted).

## IV.   ARGUMENT

### A. Mr. Wilson Disputes the Adequacy and Admissibility of the Government's Rule 404(b) Notice

As an initial matter, Mr. Wilson disputes the adequacy and admissibility of the prosecution's Rule 404(b) notice in its entirety. He does not agree that the notice satisfies Rule 404(b)'s procedural requirements, that the Government has sufficient proof to establish the acts described, or that the alleged conduct is properly attributable to Mr. Banks—or to any other defendant. Mr. Wilson likewise does not concede that these allegations are admissible under Rules 404(b) or 403 in any trial. To be clear, Mr. Wilson preserves his objections to the sufficiency and admissibility of this notice and joins the separate motion seeking to exclude this evidence in full.

Nevertheless, if any portion of the voluminous noticed material were admitted against against Mr. Banks, it would be patently unfair. Mr. Wilson will be forced to defend himself before a jury saturated with evidence that, by the Government's own account, has nothing to do with him. The sheer disparity between the evidence against Mr. Banks and the absence of comparable evidence against Mr. Wilson compels severance in order to protect his right to a fair trial.

**B. The Government's 404(b) Case Against Mr. Banks Will Create Severe and Incurable Spillover Prejudice Against Mr. Wilson**

The Government's 404(b) notice sets forth allegations of extreme violence and retaliatory plots solely attributable to Mr. Banks. None of this is Mr. Wilson's conduct. Mr. Wilson's name appears in the notice only in limited April 2023 text threads. Even then, he is not the speaker of any incriminating statements, nor is there evidence that he endorsed or acted on Mr. Banks's rhetoric. His role is passive and peripheral—merely appearing on a text chain dominated by messages allegedly authored by Mr. Banks.

If Wilson were tried alone, virtually all of this evidence would be inadmissible as improper propensity evidence. *See* Fed. R. Evid. 404(b). But in a joint trial, the jury will be exposed to an avalanche of inflammatory material—accounts of shootings, claims of bounties, and Banks's 'confessions' in lyrics. Against that evidentiary backdrop, Mr. Wilson's mere inclusion in group texts would easily be blurred into guilt by association. This is precisely the danger the courts warn against when they caution that jurors "might impute the guilt of some defendants to other defendants." *United States v. DeRosa*, 670 F.2d 889, 898 (9th Cir. 1982).

Even if relevance could somehow be strained, Rule 403 dictates exclusion. Courts have recognized that when voluminous 404(b) evidence against one co-defendant dwarfs the case against another, severance is necessary. *Bronco*, 597 F.2d at 1302-03 (severance mandated where evidence admissible against co-defendant was inadmissible against moving defendant); *Gallo*, 668 F. Supp. at 752-53 (joint trial improper where prejudicial evidence had no relevance to certain defendants).

Here, the disparity in evidentiary weight is dramatic. While Mr. Banks will face a case centered on violent conspiracies unfolding over three years, the Government's allegations concerning Mr. Wilson amount to being copied on a text thread. In a joint trial, the risk is that jurors will conflate and collapse both narratives which undermines the basic right to individualized guilt determinations.

It is "to ask too much of lay (and perhaps of judicial) minds" to expect jurors to filter through incendiary narratives of revenge killings, threats, and lyrics while keeping Mr. Wilson's isolated references separate. *United States v. Gallo*, 668 F. Supp. at 753 (quoting *United States v. Praetorius*, 462 F. Supp. 924, 928 (E.D.N.Y. 1978)). This evidentiary imbalance is exactly what Rule 14 was designed to prevent.

### C. The Introduction of Irrelevant, Inflammatory Evidence Against Mr. Wilson Would Significantly Undermine His Strong Defense

Accepting for the sake of argument the Government's allegations, the case against Mr. Wilson is not strong. Forcing Mr. Wilson to confront this extraneous 404(b) evidence would allow the government to secure a conviction without satisfying its high burden of proof.

According to the operative indictment, Mr. Wilson (a) was not a leader of OTF (b) did not initiate a bounty or make any payments; (c) did not procure any weapons, vehicles, or any other items associated with the offense (d) did not drive any vehicle and (e) did not use or possess any firearm. Although the Government accuses Mr. Wilson of other acts, such as purportedly recruiting individuals, this information comes from a cooperating witness. Such testimony is inherently suspect and must be evaluated with "greater caution than that of other witnesses." Ninth Circuit Model Criminal Jury Instruction 3.9. (2022 ed. & supp. update 2025). Allowing the government to introduce overwhelming extraneous evidence against Mr. Wilson runs the risk of unfairly tipping the balance in the prosecution's favor.

### D. Limiting Instructions Cannot Cure the Prejudice

The Government may argue that limiting instructions can cure any prejudice. But case law and common sense reject this claim where inflammatory "spillover" evidence dominates the trial. *Zafiro*, 506 U.S. at 539 (1993) acknowledged that severance is warranted where such prejudice is great. The Ninth Circuit has similarly recognized that no instruction can erase the mental imprint left by devastating

allegations --- murders, bounties, and threats --- that have nothing to do with Mr. Wilson. *Donaway*, 447 F.2d at 943.

Here, exposing a jury to repeated references to revenge killings, social media pressure campaigns, and violent lyrics by Mr. Banks, then instructing them to disregard all of it when considering Mr. Wilson, is a fiction. It is unreasonable to ask jurors to engage in these "mental gymnastics." *Gallo*, 668 F. Supp. at 753 ("To tell a jury to ignore this proof is to ask the impossible."). The prejudice cannot be instructed away.

### E. Severance Is the Only Adequate Remedy

Against this backdrop, severance is the only way to safeguard Mr. Wilson's trial rights. Redactions, limiting instructions, or partial exclusions would leave in place the central problem: that the government intends to present an overarching narrative of violence and retaliation that does not involve Mr. Wilson, but that inevitably colors the jury's perception of him. Severance will not only protect Wilson, but also streamline the evidence at his trial to matters actually relevant to him, rather than embroiling him in proof aimed at another defendant.

## V. CONCLUSION

For these reasons, the Court should sever Mr. Wilson's trial from Mr. Banks and other co-defendants against whom the Government intends to introduce Rule 404(b) material.

Respectfully submitted,

Dated: October 6, 2025  　　/s/ Craig A. Harbaugh  
　　　　　　　　　　　　　CRAIG A. HARBAUGH  
　　　　　　　　　　　　　Attorney for Deandre Wilson

## **DECLARATION OF CRAIG A. HARBAUGH**

I, Craig A. Harbaugh, declare:

1. I am an attorney, licensed to practice law in the State of California and am admitted to practice in this Court. I am counsel of record for Mr. Wilson in the above matter.

2. Attached as Exhibit A is a true and correct copy of the Government's 404(b) Notice dated September 1, 2025.

3. On October 1, 2025, the defense conducted a meet and confer with Assistant United States Attorney Daniel Weiner regarding the parties' proposed motions. During the meeting, AUSA Weiner indicated that the Government opposed the relief sought in this motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 6, 2025, in Los Angeles, California.


*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH
Attorney for Deandre Wilson