NAME, ADDRESS AND TELEPHONE NUMBER OF ATTORNEY(S)

Craig A. Harbaugh (SBN 194309)
Harbaugh Law PC
360 E. 2nd Street, Suite 800
Los Angeles, CA 90012
(213) 986-8656 email: craig@harbaugh.law

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NUMBER |
|---|---|
| PLAINTIFF | 2:24-CR-00621-MWF-2 |
| v. | |
| Deandre Wilson | |
| DEFENDANT. | **APPLICATION FOR REVIEW OR RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE OR DETENTION (18 U.S.C. §3142) AND REQUEST FOR HEARING** |

Application is made by ☐ plaintiff ☑ defendant Deandre Wilson that a hearing be held to review /reconsider the decision of

☐ United States District Judge _____ by order dated: _____
or
☑ Magistrate Judge Maria A. Audero _____ by order dated: November 15, 2024

   ☐ denying release and imposing detention under subsection ☐ (d) or ☐ (e) of Title 18 U.S.C. §3142; or
   ☐ ordering release upon certain conditions, or
   ☐ denying detention.

   ☑ A hearing is being sought before Magistrate Judge Maria A. Audero as there is new information to be presented that was not considered by the previous judicial officer; or

   ☐ A hearing is being sought before a District Judge to review all information presented to and considered by the previous judicial officer (to be presented to Criminal Duty District Judge if case is unassigned).

Relief sought *(be specific)*:
Mr. Wilson requests release on bond on the following conditions: (1) affidavit of surety with justification (property), stepfather, $40,000; (2) affidavit of surety without justification, sister, $50,000; (3) affidavit of surety without justification, cousin, $50,000; (4) all standard conditions of release; (5) any other conditions the Court deems appropriate.

Counsel for the defendant and plaintiff United States Government consulted on _____ and opposing counsel declines to stipulate to an order providing the relief sought.

☐ Telephonic notice given to ☑ AUSA ☐ Defendant's Counsel ☐ PSA ☐ Interpreter ☐ USM ☐ Probation on May 19, 2026 _____.

An interpreter is ☐ required ☑ not required. Language _____
Defendant is ☑ in custody ☐ not in custody.

May 21, 2026 _____
Date

/s/ Craig A. Harbaugh, Attorney for Deandre Wilson
Moving Party

**APPLICATION FOR REVIEW OR RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE/DETENTION, (18 U.S.C. §3142) AND REQUEST FOR HEARING**

CR-88 (09/24)

CRAIG A. HARBAUGH (Bar No. 194309)
HARBAUGH LAW, PC
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Tel:     (213) 986-8656
Email: craig@harbaugh.law

Attorney for Defendant
DEANDRE WILSON

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff,* <br><br> v. <br><br> DURK BANKS, *et al*, <br> *Defendant.* | No. 2:24-cr-621-MWF-2 <br><br> DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Defendant Deandre Wilson, by and through his counsel of record, Craig A. Harbaugh, hereby applies for review or reconsideration of the November 15, 2024, detention order under 18 U.S.C. § 3142(f)(2). This application is supported by the attached Memorandum of Points and Authorities, the accompanying CR-88 form, and the entire record in this case. The Government opposes this application.

Respectfully submitted,

Dated: May 21, 2026         */s/ Craig A. Harbaugh*

CRAIG A. HARBAUGH

Attorney for Deandre Wilson

1
DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

## **INTRODUCTION**

"In our society, liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Court should grant Mr. Wilson's application for review and order release on conditions for three reasons. *First*, the Government cannot carry its burden of persuasion under 18 U.S.C. § 3142(g). Mr. Wilson's alleged role is materially subordinate to every other charged defendant, all the alleged participants are in custody, and the alleged enterprise is dismantled. Further, since the original detention hearing, the Government has itself narrowed the allegations against Mr. Wilson removing its specific allegation that Mr. Wilson was responsible for paying the alleged bounty for the killing of S.R.

*Second*, Mr. Wilson has already spent more than eighteen months in pretrial custody, and the trajectory points to much longer. The Government has informed defense counsel that it is considering filing supplemental charges by June 3, 2026. The new charges would add two alleged incidents as direct evidence, including conduct the Government had affirmatively withdrawn from its case-in-chief three months ago. Supplemental charges of that scope will not permit the August 20, 2026, trial date to hold, and Mr. Wilson's pretrial detention is poised to become indefinite.

*Third*, Mr. Wilson offers a fulsome surety package, demonstrating strong family support. These serious financial commitments, combined with stringent comprehensive conditions, can reasonably assure both Mr. Wilson's appearance and the safety of the community.

## **II.    PROCEDURAL BACKGROUND**

Mr. Wilson made his initial appearance on November 15, 2024. *See* ECF No. 53. At that detention hearing, the Government invoked the applicable rebuttable presumption, and the magistrate judge ordered Mr. Wilson detained pending trial. *Id*.

1

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

Mr. Wilson has remained in custody since his initial appearance, now more than eighteen months.

On May 1, 2025, the Government filed the Second Superseding Indictment (SSI), charging Mr. Wilson and five co-defendants with conspiracy (Count One) and aiding and abetting (Count Two) use of interstate facilities to commit murder-for-hire, aiding and abetting stalking (Count Three), and aiding and abetting the use, carrying, and discharge of firearms, including a machinegun, in furtherance of crimes of violence (Count Four), all resulting in death. ECF No. 147. Counts One and Four trigger the rebuttable presumption under 18 U.S.C. § 3142(e)(3)(B).

In February 2026, the Government withdrew its proposed Rule 404(b) evidence concerning the 2022 Chicago incident at the in limine hearing. ECF No. 380 at 2; ECF No. 386 at 4 (referring to the withdrawn material as the "Chicago Incident"). On May 13, 2026, the Government informed defense counsel that it is considering seeking supplemental charges that would charge the Chicago 2022 incident and an incident from 2019 in Atlanta as direct evidence in this case.

On February 26, 2026, the Court denied Mr. Wilson's motion to sever. ECF No. 386. In doing so, the Court observed that the severance motion "was considerably stronger before the government's withdrawal of the 'Chicago Incident' . . . ." *Id*. at 3. The Government has now signaled its intention to bring both the Chicago Incident and a previously unproposed Atlanta 2019 incident into this case as direct evidence. Neither involves Mr. Wilson.

### III.   LEGAL STANDARD

**A.   Pretrial Release Is the Default Under the Bail Reform Act**

Liberty is the constitutional norm and pretrial detention is the narrow exception. *Salerno*, 481 U.S. at 755. The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

that will reasonably assure the appearance of the person as required." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (citing 18 U.S.C. § 3142(c)(2)). A court may order detention only on a finding that "no condition or combination of conditions" can reasonably assure appearance and community safety. 18 U.S.C. § 3142(e)(1). "Only in rare cases should release be denied . . . ." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). "[D]oubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The Act "mandates an individualized evaluation guided by the factors articulated in § 3142(g)," and "[a]ny doubts regarding the propriety of pretrial release are to be resolved in favor of the defendant." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019).

The Bail Reform Act establishes a four-factor test that the Court must apply: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). For the first two factors, courts cannot "consider any uncharged conduct." *United States v. Medrano*, No. 24-cr-00226-BLF-5, 2024 U.S. Dist. LEXIS 107465, at *10 (N.D. Cal. June 17, 2024); *see also United States v. Watkins*, 940 F.3d 152, 164 (2d Cir. 2019) ("We reject this interpretation of the word 'involves' in § 3142(f)(1) as permitting consideration of related, but uncharged, conduct."). "[T]he weight of the evidence is the least important [factor], and the statute neither requires nor permits a pretrial determination of guilt." *Gebro*, 948 F.2d at 1121.

To carry its burden of persuasion in seeking detention, the Government must demonstrate by a preponderance of the evidence that the defendant poses a risk of flight, and by clear and convincing evidence that he presents a danger to the community. *Motamedi*, 767 F.2d at 1406. Clear and convincing evidence is a higher burden than preponderance and must induce "an abiding conviction that the truth of

3

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985); *accord United States v. Aslanian*, 644 F. Supp. 3d 589, 595 (C.D. Cal. 2022).

## B.   The Rebuttable Presumption

Counts One and Four trigger the rebuttable presumption under 18 U.S.C. § 3142(e)(3)(B). The presumption "shifts a burden of production to the defendant," but "the burden of persuasion remains with the government." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). The defendant's burden of production "is not heavy[.]" *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991); *accord United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). "To rebut the presumption, a defendant need only produce 'some evidence' that there are conditions that would reasonably assure his appearance and community safety." *United States v. Garcia*, No. 2:25-cr-00091-TL, 2025 U.S. Dist. LEXIS 127164, at *4 (W.D. Wash. July 3, 2025).[1]

## C.   Reopening Under § 3142(f)(2)

Section 3142(f)(2) authorizes reopening "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing" on the detention determination. 18 U.S.C. § 3142(f)(2). Newly available surety information bears directly on whether conditions can reasonably assure appearance. *See United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (reopening where "the full extent of [movant's] potential sureties was not fully known and available to him" at the original hearing, because

---

[1] Once rebutted, the presumption "is not erased; rather, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Hir*, 517 F.3d at 1086.

4

family collateral "does have a material bearing on whether there is a condition of release that will reasonably assure his appearance at trial").

## IV.   ARGUMENT

### A.   Mr. Wilson Has Rebutted the Presumption

While the offenses charged in Counts One and Four trigger the rebuttable presumption, Mr. Wilson satisfies his light burden of production. He has produced concrete evidence that conditions exist that can reasonably assure his appearance and the community's safety, including the new surety package, family residence and support in Illinois, the absence of any allegation that Mr. Wilson personally participated in any violence, and the dismantled state of the alleged conspiracy with every charged co-defendant now in custody. On a "not heavy" production burden, *Stricklin*, 932 F.2d at 1355, that showing is more than sufficient.

With the presumption rebutted, the burden of persuasion shifts back to the Government. *Hir*, 517 F.3d at 1086.

### B.   The Government Cannot Carry Its Burden Under § 3142(g)

The Government cannot establish by clear and convincing evidence that no condition or combination of conditions will reasonably assure community safety. Each of the four § 3142(g) factors weighs against detention on the present record.

#### 1.   Nature and Circumstances of the Offense

The seriousness of the conduct charged is undeniable.[2] But seriousness alone does not justify detention. The Bail Reform Act requires that seriousness be supported

---

[2] Mr. Wilson does not concede the truth of any charge in this case. He maintains his innocence and intends to exercise his constitutional right to trial. He engages with the indictment and the Government's accusations in this application only because the Court may consider "the nature of the offense and the evidence of guilt" in the detention analysis," and "only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Motamedi*, 767 F.2d at 1408. Nothing herein is an admission, stipulation, or concession of guilt.

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

by evidence sufficient to establish, by clear and convincing evidence, that no conditions can reasonably assure safety. On Mr. Wilson's individualized record and given that only "charged" conduct may be considered, *Medrano*, 2024 U.S. Dist. LEXIS 107465, at \*10, the inquiry requires careful attention to what the indictment actually alleges he did and did not do.

Consider first what the SSI does not allege. The Government does not claim that Mr. Wilson: (a) placed the bounty; (b) coordinated the murder; (c) procured any firearm, rental car, ski mask, or hotel room; (d) drove any vehicle involved in the shooting; (e) rode in the shooting vehicle; (f) donned a mask; (g) fired any weapon; (h) participated in the shooting itself; (i) was present when the shots were fired; or (j) paid a bounty.

What the SSI does allege is far more limited. It alleges that Mr. Wilson was told in coded language about a bounty, recruited others to travel to California and texted their biographical information so that flights could be booked, flew from Chicago to San Diego, traveled by car toward Los Angeles, traveled to a hotel where T.B. was staying, followed and was a passenger in the white BMW that tracked T.B.'s black Escalade, traveled to a hamburger restaurant after the shooting, and flew back to Chicago. SSI, Overt Acts 1, 5, 7-12, 17-21, 25-27. In sum: recruitment of two participants, forwarding their identifying information, and presence as a passenger in a follow vehicle. Mr. Wilson is the only charged defendant whose alleged conduct does not include ordering, financing, supplying, driving, or executing the shooting.

Further, the Government's charging history has changed since Mr. Wilson's original detention. The First Superseding Indictment (FSI), the operative charging document at his initial appearance, alleged "[a]t the direction of defendant BANKS, defendant WILSON would pay the bounty or monetary reward, and/or cause payment to be made for the killing of S.R., on behalf of co-conspirators known and unknown, to the conspirators hired to kill T.B." FSI, ECF No. 27 at 6 (Means ¶ 9). The SSI,

6

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

filed May 1, 2025, removed that allegation. The only remaining payment allegation is the general statement that "co-conspirators known and unknown, including defendants BANKS and WILSON, would pay anyone who took part in the killing of T.B." SSI Count One (Means ¶ 1). The SSI does not allege Mr. Wilson paid anyone.

This narrowing is material. The detention order rested on the FSI's allegation that Mr. Wilson would pay the bounty for the killing of S.R.; the SSI contains no such allegation. The Government has narrowed Mr. Wilson's alleged role in a manner that goes directly to the danger and seriousness inquiries under § 3142(g) and constitutes new information bearing materially on the detention determination, supporting reconsideration under 18 U.S.C. § 3142(f)(2).

The Government does not contend that Mr. Wilson is part of an ongoing pattern of violence. The charged conduct is a single incident on August 18-19, 2022. The bounty is not alleged to have been initiated or supplied by Mr. Wilson. The alleged underlying motivating event, the November 2020 killing of D.B., had nothing to do with Mr. Wilson and is years removed from any alleged ongoing activity. There is no allegation of any subsequent violent conduct by Mr. Wilson. Every charged co-defendant is in federal custody. There is no operational organization for Mr. Wilson to rejoin if released.

### 2. Weight of the Evidence

The Government's anticipated case against Mr. Wilson rests in significant part on the testimony of cooperating witnesses. The Ninth Circuit's model instruction advises that such testimony should be examined "with greater caution than that of other witnesses." Ninth Cir. Model Crim. Jury Instr. 3.9 (2023). On this record, the weight of the evidence cannot carry the Government's clear-and-convincing burden on danger.

7

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

### 3. History and Characteristics

Mr. Wilson's history and characteristics weigh in favor of release. He is supported by a stable family network in Illinois, including his stepfather, sister, and cousin and all of whom have come forward to pledge either property or signature bonds in support of his release. That commitment is not merely symbolic. It places concrete assets and income at risk in the event Mr. Wilson fails to appear or violates conditions. As the Ninth Circuit has explained, "[t]he purpose of bail is not served unless losing the sum would be a deeply-felt hurt to the defendant and his family; the hurt must be so severe that defendant will return for trial rather than flee." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) (internal citation omitted).

### 4. Nature and Seriousness of Danger

The clear-and-convincing-evidence inquiry on danger, with its required "high degree of certainty," *Chimurenga*, 760 F.2d at 405, cannot be met on the present record. Two considerations are decisive.

First, the absence of personal-violence allegations. As discussed above, the SSI does not allege that Mr. Wilson personally directed, financed, armed, transported, or executed any violent act. His alleged conduct is recruitment and travel. That is materially less serious than the alleged conduct of every other charged co-defendant, and it materially limits any inference about his propensity for present danger.

Second, the dismantled state of the alleged enterprise. Every alleged participant in the August 2022 trip is in federal custody. Accepting the government's contention that an operational network once existed, it exists no longer and there is nothing for Mr. Wilson to rejoin.

### C. Mr. Wilson's Extended Pretrial Detention Reinforces Release

The eighteen months Mr. Wilson has already spent in custody, the August 20, 2026, trial date now set, and the realistic trajectory of further delay call for careful,

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

individualized, reassessment of detention on the current record. The Ninth Circuit has held that "[t]he point at which pretrial detention constitutes a due process violation requires a case-by-case analysis," and that the relevant factors are "(1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021).

The joint trial is set for August 20, 2026, more than eighteen months after Mr. Wilson's initial appearance. Every continuance the joint proceeding requires extends his pretrial detention in lockstep.

Three months before trial, the Government has signaled it will charge two new alleged incidents as direct evidence. The sequence matters. The Government first noticed its intent to use the Chicago Incident on September 1, 2025; the defense investigated and prepared accordingly; the Government withdrew that evidence at the February 9, 2026 hearing; defense preparation reasonably refocused on the operative charging document; and on May 13, 2026, the Government announced it may bring the Chicago incident back, and an entirely new incident (Atlanta 2019) as direct charges. ECF No. 380 at 2. Re-arraignment, expanded discovery on two separate alleged events, additional motion practice, and a resumed and significantly expanded defense investigation would follow. As a result of the Government's late-stage charging decision, the August 20, 2026, trial date will not hold. Mr. Wilson's pretrial detention will extend well beyond the eighteen months he has already served.

Both alleged incidents long predate the conduct charged in this case. The Atlanta 2019 incident occurred in January 2019, more than three years before the August 2022 conduct in the SSI. Defendant Banks was arrested on Fulton County state charges in May 2019; on October 17, 2022, the Fulton County District Attorney's Office moved to dismiss those charges, citing prosecutorial discretion.

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

Banks was never indicted.[3] The Chicago 2022 incident occurred in January 2022, also before the August 2022 conduct in the SSI. Law enforcement investigated both incidents for years before the Government filed the original indictment in October 2024. The Government had every opportunity to include them then and chose not to. It later sought to introduce the Chicago 2022 incident as Rule 404(b) evidence and withdrew that proffer at the February 9, 2026, hearing. ECF No. 380 at 2. Three months before trial, the Government announces a different choice.

Compounding the unfairness, neither incident involves Mr. Wilson. If these charges land, he will sit in custody for months while counsel — his and his co-defendants' — investigate, prepare motions, and develop a defense to two events to which the Government does not place him. The defendant least proximate to the new allegations bears the heaviest cost: more time in jail.

The Government's anticipated filing forces Mr. Wilson into a constitutional dilemma. Consent to a continuance, and pretrial detention extends past eighteen months, deepening the due process concerns the Fifth Amendment guards against. *Torres*, 995 F.3d at 708. Insist on the August trial date and proceed without the time required to defend two new alleged events, surrendering the Sixth Amendment right to effective assistance of counsel. Mr. Wilson cannot be required to trade one constitutional right for another. Release on conditions resolves the dilemma.

The Court itself flagged this risk. In denying severance on February 26, 2026, the Court observed that the motion "was considerably stronger before the government's withdrawal of the 'Chicago Incident' . . ." ECF No. 386 at 3. The Government now signals re-introduction of that exact conduct. The factor the Court identified as having weakened the prior severance motion is restored. Mr. Wilson

---

[3] Joi Dukes, *Charges Dropped Against Chicago Rapper Lil Durk in 2019 Shooting Near the Varsity*, FOX 5 Atlanta (Oct. 23, 2022), https://www.fox5atlanta.com/news/charges-dropped-against-chicago-rapper-lil-durk-in-2019-shooting-near-the-varsity.

10

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

does not move for severance here. He notes only that any joint-trial scenario built on the planned supplemental charges will not hold to August 20, 2026, and Mr. Wilson will pay for that delay in custody.

### D. Conditions, Including the New Surety Package, Will Reasonably Assure Appearance and Safety

Three sureties have committed, in concrete terms, to support Mr. Wilson's release. First, Mr. Wilson's stepfather owns a residence in Illinois with an approximate value of $40,000 and is willing to pledge the available equity in that property to secure Mr. Wilson's appearance. Second, Mr. Wilson's sister is willing to execute a $50,000 appearance bond, or such other amount as the Court deems appropriate. Third, Mr. Wilson's cousin is also willing to execute a $50,000 appearance bond, or such other amount as the Court deems appropriate. These three sureties create financial consequences for Mr. Wilson's appearance that did not exist on the original record.

In addition to the sureties, Mr. Wilson submits to severe release conditions, including 24-hour home detention with continuous GPS monitoring at the stepfather's residence, the stepfather serving as third-party custodian, surrender of all travel documents and restricted travel, no contact with alleged victims, witnesses, or co-defendants, a firearms prohibition, electronic communications monitoring, transfer of supervision to the Northern District of Illinois, and any additional condition the Court deems appropriate.

Together, these conditions have real and meaningful financial consequences for Mr. Wilson's nonappearance, foreclose unsupervised contact with the alleged victims and co-defendants, eliminate any practical opportunity to obtain or use a firearm, and provide Pretrial Services with continuous monitoring of Mr. Wilson's location and communications. The Bail Reform Act requires reasonable assurance, not certainty. The proposed package more than satisfies that standard.

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

## V.   CONCLUSION

For the foregoing reasons, Mr. Wilson respectfully requests that the Court order Mr. Wilson's release.

Respectfully submitted,

Dated: May 21, 2026      */s/ Craig A.  Harbaugh*

CRAIG A.  HARBAUGH

Attorney for Deandre Wilson

DEFENDANT WILSON'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

## <u>DECLARATION OF CRAIG A. HARBAUGH</u>

I, Craig A. Harbaugh, declare:

1.    I am an attorney, licensed to practice law in the State of California and am admitted to practice in this Court. I am counsel of record for Mr. Wilson in the above matter.

2.    On May 18, 2026, the defense contacted the Assistant United States Attorney Daniel Weiner regarding the proposed bond. On May 19, 2026, AUSA Weiner indicated that the Government opposed the relief sought in this motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 21, 2026, in Los Angeles, California.


*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH
Attorney for Deandre Wilson