**F I L E D**
CLERK, U.S. DISTRICT COURT

6/3/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KM_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2026 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>DURK BANKS,<br>　aka "Lil Durk,"<br>　aka "Blood,"<br>　aka "Smurk,"<br>　aka "Lil Dude,"<br>DEANDRE DONTRELL WILSON,<br>　aka "OTF DeDe,"<br>　aka "Threat,"<br>　aka "Big Threat,"<br>　aka "Deeski,"<br>DAVID BRIAN LINDSEY,<br>　aka "Browneyez," and<br>ASA HOUSTON,<br>　aka "OTF Boogie,"<br><br>　　　　Defendants. | 2:24-cr-621(C)-MWF<br><br>T H I R D<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1959(a)(1): Murder in Aid of Racketeering; 18 U.S.C. § 371: Conspiracy to Commit Stalking; 18 U.S.C. §§ 2261A(2)(A), (B), 2261(b)(1): Stalking Resulting in Death; 18 U.S.C. § 1958(a): Conspiracy and Use of Interstate Facilities to Commit Murder-For-Hire Resulting in Death; 18 U.S.C. § 924(c)(1)(A)(iii), (c)(1)(B)(ii): Possess, Use, Carry, and Discharge Firearms and Machinegun in Furtherance of, and During and in Relation to, a Crime of Violence; 18 U.S.C. §§ 981(a)(1)(C), 924(d)(1), and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Third Superseding Indictment:

A.    THE RACKETEERING ENTERPRISE

1.    Defendants DURK BANKS, also known as ("aka") "Lil Durk," "Blood," "Smurk," and "Lil Dude," DEANDRE DONTRELL WILSON, aka "OTF DeDe," "Threat," "Big Threat," and "Deeski," ASA HOUSTON, aka "OTF Boogie," and Kavon Grant, aka "Cuz" and "Vonnie," and others known and unknown to the Grand Jury, were members and associates of a criminal organization engaged in, among other things, acts and threats involving murder and attempted murder, robbery, and trafficking in controlled substances.

2.    In or around 2010, defendant BANKS formed an organization called Only the Family, or "OTF," which, among other things, produced and sold the hip hop music of artists primarily from the Chicago, Illinois area.  After the formation of OTF, a subset of OTF members and associates (hereinafter the "Banks Gang Enterprise") engaged in acts and threats of violence at the direction of defendant BANKS, including murder and attempted murder, to maintain and enhance their status in the Banks Gang Enterprise and to be rewarded by defendant BANKS through economic benefits, including money, lucrative music opportunities, and jewelry.  The Banks Gang Enterprise, including its leadership, members, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Sections 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact, although not a legal entity, which engaged in, and the activities of which affected, interstate and foreign commerce.  The Banks Gang Enterprise constituted an ongoing organization whose

members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise, as further alleged below.

B.    BACKGROUND AND PURPOSES OF THE BANKS GANG ENTERPRISE

1.    Defendant BANKS was the leader of the Banks Gang Enterprise.  Defendants WILSON, HOUSTON, and Grant, and Co-Conspirators 2 through 6 were members or associates of the Banks Gang Enterprise.  Defendants DAVID BRIAN LINDSEY, aka "Browneyez," Keith Jones, aka "Flacka," and Co-Conspirators 7 through 8 were individuals associated with members of the Banks Gang Enterprise.

2.    Defendant BANKS formed the Banks Gang Enterprise by recruiting, among others, violent members and affiliates of the Black Disciples gang, including defendant WILSON, from different neighborhood blocks in and around the Chicago area.  Defendants BANKS and WILSON and Co-Conspirators 2 through 6 were members, associates, or affiliates of the Black Disciples gang.  Defendant HOUSTON was a close associate of defendant BANKS and other enterprise members who were associated with the Black Disciples gang.  Members and associates of the Banks Gang Enterprise would use violence to preserve and promote defendant BANKS' and the enterprise's power and influence, including influence and/or control of Black Disciple-controlled neighborhoods in Chicago, and to provide security and protection for defendant BANKS, including protection from rivals of defendant BANKS.

3.    The Banks Gang Enterprise committed violence, including murder and attempted murder, and threats to commit murder, to promote the enterprise and to seek revenge against its rivals, including members of the Gangster Disciples gang and individuals who harmed, attempted to harm, or disrespected members and associates of the

3

Banks Gang Enterprise.  For example, following the November 2020 killing of D.B., who was a member of the Banks Gang Enterprise and the Black Disciples gang, and a close friend and associate of defendant BANKS, defendant BANKS and other enterprise members conspired to murder those whom they perceived as responsible for D.B.'s death, including T.B., as further alleged in Counts One through Six below.

4.    Defendant BANKS and the leadership of the Banks Gang Enterprise, including defendants WILSON and Co-Conspirator 5, recruited other gang members and/or affiliates to commit violence for the enterprise, including defendants LINDSEY and Jones, and Co-Conspirator 2.

5.    Defendant BANKS funded the criminality and violence committed by members and associates of the Banks Gang Enterprise, including by facilitating the purchase of stolen cars to facilitate violent acts.  Specifically, defendant BANKS would cause the purchase of stolen cars, which enterprise members referred to as "sliders" or "hot cars."  To avoid law enforcement detection, members and associates of the Banks Gang Enterprise would use "sliders" and fake license plates to commit violent acts against their opponents and rivals, which enterprise members frequently referred to as "ops." Enterprise violence, particularly shootings, was often referred to by enterprise members as "drills" or "sliding."

6.    Defendant BANKS also funded the criminality and violence committed by members and associates of the Banks Gang Enterprise, including by facilitating the purchase of firearms and flights to travel to locations to kill the enterprise's rivals, funding the

purchase of distribution quantities of illegal drugs, and rewarding violence committed for the benefit of the Banks Gang Enterprise.

7.    Defendant BANKS funded the purchase of controlled substances for distribution in, among other places, Chicago and Georgia, by members, associates, and affiliates of the Banks Gang Enterprise, to secure the members', associates', and affiliates' loyalty and willingness to provide continued protection, and to engage in violent acts against rivals of defendant BANKS and the Banks Gang Enterprise.

8.    Defendant BANKS provided the monetary and other assistance described above to members, associates, and affiliates of the Banks Gang Enterprise to secure their loyalty, and their willingness to provide protection and retribution against rivals of defendant BANKS and the Banks Gang Enterprise.

9.    Defendants BANKS, WILSON, HOUSTON, and LINDSEY, and others known and unknown to the Grand Jury, including various members and associates of the Banks Gang Enterprise, engaged in the following acts of violence in furtherance of the enterprise:

a.    The attempted murder of Victim 1 in Atlanta, Georgia on or about February 5, 2019, by, among others, defendant BANKS, D.B., and Co-Conspirator 6, which was motivated by a dispute over the purchase of a stolen car.  Specifically, members, associates, and affiliates of the Banks Gang Enterprise, including Co-Conspirator 6, confronted Victim 1 about a stolen car that Victim 1 had sold Co-Conspirator 6.  Co-Conspirator 6 demanded a refund.  When Victim 1 refused to pay, Co-Conspirator 6 attempted to rob him.  After Victim 1 resisted, members of the Banks Gang Enterprise, including defendant

BANKS and D.B., produced firearms and began shooting at Victim 1, striking and wounding Victim 1.

b.    The murder of Victim 2, a rival gang member in Chicago, Illinois, on or about January 27, 2022, by, among others, Co-Conspirators 7 and 8, which was motivated by the promise to pay and, receipt of a reward from, defendant BANKS and members of the Banks Gang Enterprise.  Following the murder of Victim 2, on or about February 2, 2022, Co-Conspirators 7 and 8 discussed obtaining payment for killing Victim 2 from defendant Banks and the Banks Gang Enterprise.  Specifically, Co-Conspirator 8 sent a text message to Co-Conspirator 7 stating, "Wassup with otf . . . wym they not paying."  In response, Co-Conspirator 7 responded, "we waiting he [defendant BANKS] comes up here on the 17."  On or about February 17, 2022, Co-Conspirator 7 traveled to a location in or around Chicago, Illinois, where defendant BANKS was recording the music video for Music Song 1 and being interviewed.  Defendant BANKS brought approximately $1 million dollars in cash to the location, which was displayed as defendant BANKS was being interviewed.  At the time, multiple members and associates of the Banks Gang Enterprise were present, including defendants WILSON and Jones, and Co-Conspirators 4 and 5.

//

//

//

6

Co-Conspirator 7 subsequently created a social media post in which Co-Conspirator 7 displayed his monetary reward from the Banks Gang Enterprise and played an excerpt of defendant BANKS' Music Song 1 about stalking and murdering a rival, as depicted in the screenshot below.

c.    As revenge for the killing of D.B., the conspiracy to commit murder and the attempted murder of T.B. in Blackshear, Georgia, on or about May 2, 2021, by, among others, members of the Banks Gang Enterprise, including defendants BANKS and Grant; and

d.    As revenge for the killing of D.B., the conspiracy to stalk and murder T.B., the stalking and attempted murder of T.B., and the murder of S.R. in Los Angeles, California, on or about August 19, 2022, by, among others, defendants BANKS, WILSON, HOUSTON, LINDSEY, Grant, and Jones, and Co-Conspirators 2-6.

10.   Through phone calls, text communications, social media posts, and musical lyrics, members and associates of the Banks Gang

7

Enterprise, including defendants BANKS and WILSON, would: (i) boast about and celebrate violence committed by members, associates, and affiliates of the Banks Gang Enterprise; and (ii) taunt and disrespect rivals of defendant BANKS and the Banks Gang Enterprise, including by mocking rivals who had been killed.

11.   The Banks Gang Enterprise would commit these violent and boastful acts for the purpose of, among other things: (i) preserving, protecting, and promoting the enterprise, enhancing the reputation of its members and associates, and enriching defendant BANKS and the enterprise's members and associates, including by commercializing the enterprise's violence in public social media, music videos, and lyrics; (ii) recruiting other individuals to join the enterprise; (iii) intimidating and retaliating against defendant BANKS' and the Banks Gang Enterprise's rivals; and (iv) preserving and expanding the power and influence of the enterprise in Chicago and Atlanta, among other places.

C.   MEANS AND METHODS OF THE ENTERPRISE

1.   The means and methods by which defendants BANKS, WILSON, and HOUSTON, and other members and associates of the Banks Gang Enterprise, conducted and participated in the conduct of the affairs of the enterprise included the following:

a.   Defendant BANKS would place bounties on individuals that he and other Banks Gang Enterprise members wanted to kill and/or reward members, associates, and affiliates of the Banks Gang Enterprise who were willing to commit, conspired to commit, attempted to commit and/or committed acts and threats of violence against defendant BANKS' and the enterprise's rivals, including members of the Gangster Disciples gang and those associated with D.B.'s murder

8

(including T.B.), with money and other economic benefits, including placement in defendant BANKS' and OTF's music videos, lucrative music opportunities, and jewelry.

b.    Members and associates of the Banks Gang Enterprise committed, including through the use of "sliders" and "hot cars," attempted to commit, conspired to commit, and threatened to commit acts involving violence, including murder and attempted murder, robbery, theft, trafficking in controlled substances, obstruction and attempted obstruction of justice, including witness tampering, to promote a climate of fear and to preserve, protect, promote, and expand the Banks Gang Enterprise's criminal operations;

c.    Members and associates of the Banks Gang Enterprise would take steps to conceal their criminality by, among other things, using "sliders" and "hot cars," coded language, encrypted messaging applications, and burner phones.

d.    Members and associates of the Banks Gang Enterprise, including defendants BANKS and WILSON, would consider cooperation with law enforcement "snitching," would refer to witnesses and suspected government informants as "snitches" or "rats," and would take steps to intimidate witnesses and suspected government informants and attempt to influence their testimony to prevent incriminating testimony against the enterprise and its members and associates.

COUNT ONE

[18 U.S.C. §§ 1959(a)(1), 2(a)]

[ALL DEFENDANTS]

1. The Grand Jury realleges paragraphs A through C of the Introductory Allegations and Overt Acts One through Thirty-Eight of Count Two of this Third Superseding Indictment here.

2. At times relevant to this Third Superseding Indictment, the Banks Gang Enterprise, including its leaders, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3. At times relevant to this Third Superseding Indictment, the Banks Gang Enterprise, through its leaders, members, and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is:

      a.   multiple acts/offenses involving:

         i.   conspiracy to commit murder, murder, and attempted murder, chargeable under California Penal Code Sections 31, 182, 187, 188, 189, and 190; Chapter 720, Illinois Compiled Statutes, Sections 5/9-1(a), 5/5-1, 5/5-2, 5/8-2(a), and 5/8-2(c)(3); Official Code of Georgia Annotated, Sections 16-5-1, 16-4-1, 16-4-8, and 16-2-20; and

ii.   the trafficking of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

4.    On or about August 19, 2022, in Los Angeles County, within the Central District of California, for the purpose of gaining entrance to and maintaining and increasing position in the Banks Gang Enterprise, an enterprise engaged in racketeering activity, and as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Banks Gang Enterprise, defendants BANKS, WILSON, LINDSEY, and HOUSTON, and others known and unknown to the Grand Jury, each aiding and abetting the others, unlawfully, intentionally, willfully, and deliberately, and with premeditation and malice aforethought, murdered victim S.R., in violation of California Penal Code Sections 31, 182, 187, 188, 189, and 190.

11

COUNT TWO

[18 U.S.C. § 371]

[ALL DEFENDANTS]

The Grand Jury realleges paragraphs A through C of the Introductory Allegations of this Third Superseding Indictment here.

A.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown, but no later than on or around November 6, 2020, and continuing to at least in or around August 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants BANKS, WILSON, LINDSEY, and HOUSTON, and co-conspirators known and unknown, conspired and agreed with each other to, with the intent to kill, injure, harass, intimidate, and place under surveillance with intent to kill, injure, harass, and intimidate another person, use facilities of interstate and foreign commerce to engage in a course of conduct that would place such person in reasonable fear of death and serious bodily injury, and would cause, attempt to cause, and would be reasonably expected to cause substantial emotional distress to that person, in violation of Title 18, United States Code, Section 2261A(2)(A), (B).

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
      ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.    Following the death of D.B. on November 6, 2020, defendant BANKS and other co-conspirators, including defendants WILSON and Co-Conspirator 2, would discuss seeking revenge for D.B.'s death, including murdering the individuals whom the co-conspirators believed were involved and/or responsible for D.B.'s death, including T.B.

12

2.    Defendant BANKS would place bounties on individuals that he and other co-conspirators wanted to kill, including T.B.  As part of the bounty, co-conspirators known and unknown, including defendants BANKS and WILSON, would promise to pay anyone who took part in the killing of T.B. and/or reward such individuals.

3.    Co-conspirators known and unknown, including defendants BANKS and WILSON, would recruit others, including defendants LINDSEY, HOUSTON, Jones, and Grant, and Co-Conspirator 2, to find, track, and kill T.B.

4.    At the direction of defendant BANKS, defendant Grant would procure cars, ski masks, and firearms that would be used by co-conspirators to find, track, and kill T.B.

5.    Using a credit card associated with OTF, Co-Conspirator 3 would purchase airplane tickets for the co-conspirators to fly to California and murder T.B.

6.    Defendants WILSON, LINDSEY, HOUSTON, and Jones, and Co-Conspirator 2, would travel from Chicago, Illinois to Southern California via airplane to find, track, and kill T.B.

7.    Defendants WILSON, LINDSEY, HOUSTON, Jones, and Grant, and Co-Conspirator 2, would travel throughout Los Angeles County via cars, including a "slider" with a fraudulent license plate, procured by defendant Grant to find, track, and kill T.B.

8.    Defendants WILSON, LINDSEY, HOUSTON, Jones, and Grant, and Co-Conspirator 2, would communicate via cell phone, including through encrypted calls, to coordinate logistics to find, track, and kill T.B.

13

9.    Defendants LINDSEY and Jones, and Co-Conspirator 2, would fire multiple shots at T.B., killing S.R., who was a passenger in T.B.'s vehicle.

10.    Co-Conspirators, including defendants BANKS and WILSON, would boast about and celebrate their violence, including defendant BANKS telling defendant WILSON via text message that "niggas don't slide or hurt mfr leaving it all up to us."

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants BANKS, WILSON, LINDSEY, and HOUSTON, and others known and unknown, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On November 7, 2020 --- the day after an associate of T.B. shot and killed D.B. --- defendant BANKS texted Co-Conspirator 3: "I can't let this slide . . . I ain't letting shit slide . . . [D.B.] dying turning me [into] a different animal."

Overt Act No. 2:    Following the killing of D.B. on November 6, 2020, defendant BANKS, using coded language, told co-conspirators, including defendant WILSON and Co-Conspirators 2, 4, and 5, that he would pay a bounty or monetary reward to anyone who took part in the killing of T.B.

Overt Act No. 3:    On or before January 21, 2021, defendant BANKS filmed and starred in an unreleased clip of a music video titled "Redman," in which defendant BANKS is depicted chasing and shooting an actor who looks substantially similar to T.B.  In the video, as depicted in the below screenshots, defendant BANKS first

14

views multiple online posts related to D.B.'s death.  After defendant BANKS (who is then wearing a mask) fires multiple gunshots directly at the T.B. look-a-like and executes the victim at short range, the video reveals that defendant BANKS is both the shooter and the getaway driver who flees the crime scene.





Overt Act No. 4:   On or about May 21, 2021, defendants BANKS and Grant, and Co-Conspirator 6, and others known and unknown, conspired to kill T.B., resulting in multiple co-conspirators following T.B. and his entourage after T.B.'s concert near Blackshear, Georgia, and attempted to kill T.B. with multiple

firearms outside of a gas station.

Overt Act No. 5:    On August 18, 2022, one or more co-conspirators, including defendant BANKS and Co-Conspirator 4, learned that T.B. was visiting California and staying at a hotel in Los Angeles.

Overt Act No. 6:    On August 18, 2022, defendants BANKS and Grant flew from Miami, Florida to Los Angeles, California on a private jet, so that defendants BANKS and Grant could help coordinate the murder of T.B.

Overt Act No. 7:    On August 18, 2022, defendant BANKS and Co-Conspirator 5 asked Co-Conspirator 2 to travel to Southern California later that day for the purpose of murdering T.B.

Overt Act No. 8:    On August 18, 2022, defendant WILSON, on behalf of defendant BANKS, recruited defendants LINDSEY and Jones to travel to California for the purpose of murdering T.B. and helped facilitate such travel by, among other things, texting Co-Conspirator 3 biographical information about defendants LINDSEY and Jones so that Co-Conspirator 3 could book flights to Southern California.

Overt Act No. 9:    On August 18, 2022, using a cellular phone ending in -9595 (the "-9595 Number"), defendant BANKS texted Co-Conspirator 3: "Don't book no flights under no names involved wit me."

Overt Act No. 10:    On August 18, 2022, using a credit card ending in -2039 ("OTF Credit Card 1"), Co-Conspirator 3 purchased airplane tickets for defendants WILSON, LINDSEY, HOUSTON, and Jones, and Co-Conspirator 2 to travel from Chicago, Illinois to San Diego, California that same day.

Overt Act No. 11:   On August 18, 2022, Co-Conspirator 3 confirmed to defendant WILSON via text message that defendants WILSON, LINDSEY, and Jones had the same airline ticket confirmation.

Overt Act No. 12:   On August 18, 2022, defendants WILSON, LINDSEY, HOUSTON, and Jones, and Co-Conspirator 2 flew from Chicago, Illinois to San Diego, California via the airplane tickets procured by Co-Conspirator 3 using OTF Credit Card 1.

Overt Act No. 13:   On August 18, 2022, defendants WILSON, LINDSEY, HOUSTON, and Jones, and Co-Conspirator 2 traveled towards Los Angeles County in a car to meet with defendant Grant.

Overt Act No. 14:   On August 18, 2022, defendant Grant purchased four black ski masks from a sporting goods store in Los Angeles County using cash.

Overt Act No. 15:   On August 18, 2022, using a credit card ending in -1015 ("OTF Credit Card 2"), defendant Grant rented a hotel room for the co-conspirators located in Los Angeles, California (the "Universal City Hotel").

Overt Act No. 16:   On August 18, 2022, in or around Los Angeles, California, defendant Grant met with the co-conspirators and provided defendants LINDSEY and Jones, and Co-Conspirator 2 with firearms --- including a firearm that had been modified to operate as a fully automatic machinegun using a device known as a "switch" --- to kill T.B.

Overt Act No. 17:   On August 18, 2022, defendant Grant provided two cars for defendants WILSON, LINDSEY, HOUSTON, Grant, and Jones, and Co-Conspirator 2 to use to find, track, and kill T.B. --- a white BMW sedan (the "BMW") from a rental company in Los Angeles County,

17

and a white Infiniti sedan (the "Infiniti") with a fake license plate, i.e. a "slider" or "hot car."

Overt Act No. 18:   On August 18, 2022, defendants WILSON, LINDSEY, HOUSTON, Grant, and Jones, and Co-Conspirator 2 traveled in the BMW and the Infiniti to a hotel in downtown Los Angeles, California where T.B. was staying (the "Downtown L.A. Hotel") to find, track, and kill T.B.

Overt Act No. 19:   On August 18, 2022, after the co-conspirators had traveled to the Downtown L.A. Hotel to attempt to kill T.B., defendant Grant met in person with defendant BANKS to give defendant BANKS an update about the co-conspirators' efforts to track and kill T.B.

Overt Act No. 20:   On August 19, 2022, using the BMW and Infiniti, defendants WILSON, LINDSEY, HOUSTON, Grant, and Jones, and Co-Conspirator 2 traveled to the Downtown L.A. Hotel where T.B. was staying to find, track, and kill T.B.

Overt Act No. 21:   On August 19, 2022, using the BMW and Infiniti, defendants WILSON, LINDSEY, HOUSTON, Grant, and Jones, and Co-Conspirator 2 followed and tracked T.B.'s black Escalade to a marijuana dispensary located on Flower Street, in Los Angeles, California.

//

//

//

18

Overt Act No. 22:    On August 19, 2022, using the BMW and Infiniti, defendants WILSON, LINDSEY, HOUSTON, Grant, and Jones, and Co-Conspirator 2 followed and tracked T.B.'s black Escalade to a clothing store located on Melrose Avenue, in West Hollywood, California.    The below image shows the BMW and Infiniti following the black Escalade in which T.B. and S.R. were passengers, as the black Escalade traveled towards the clothing store.



Overt Act No. 23:    On August 19, 2022, using the BMW and Infiniti, defendants WILSON, LINDSEY, HOUSTON, Grant, and Jones, and Co-Conspirator 2 tracked T.B.'s black Escalade to a gas station located on Beverly Boulevard, in Los Angeles, California (the "Beverly Gas Station").

Overt Act No. 24:   On August 19, 2022, defendant HOUSTON drove the Infiniti to an alley behind the Beverly Gas Station and parked the vehicle, so that defendants LINDSEY and Jones, and Co-Conspirator 2 could attempt to murder T.B.

Overt Act No. 25:   On August 19, 2022, at the Beverly Gas Station, defendants LINDSEY and Jones, and Co-Conspirator 2 exited the "slider" Infiniti, and used the firearms procured by defendant Grant --- including the fully automatic firearm --- to shoot at T.B.'s car, striking and killing S.R., who was standing next to T.B.'s car while T.B. was inside.  The images below show defendants LINDSEY and Jones, and Co-Conspirator 2 firing their guns at T.B.'s black Escalade.





Overt Act No. 26:   On August 19, 2022, in the "slider" Infiniti driven by defendant HOUSTON, defendants LINDSEY and Jones, and Co-Conspirator 2 fled the alley behind the Beverly Gas Station after the conspirators shot and killed S.R.

Overt Act No. 27:   On August 19, 2022, using OTF Credit Card 1, Co-Conspirator 3 purchased airline tickets from San Diego, California, to Chicago, Illinois, for defendants WILSON, LINDSEY, HOUSTON, and Jones, and Co-Conspirator 2.

Overt Act No. 28:   On August 19, 2022, defendants WILSON, LINDSEY, HOUSTON, and Jones, and Co-Conspirator 2 flew back to Chicago, Illinois from San Diego, California.

Overt Act No. 29:   On August 20, 2022, in a text message to the -9595 Number, Co-Conspirator 3 sent defendant BANKS a social media post with individuals mocking T.B.'s reaction to seeing S.R.'s body removed from the Escalade, which was broadcast on viral news coverage on the day of S.R.'s murder.

Overt Act No. 30:   On August 21, 2022, in a text message to the -9595 Number, Co-Conspirator 3 sent defendant BANKS a social media post about the Los Angeles shooting and S.R.'s murder.

Overt Act No. 31:   On August 21, 2022, defendant Grant traveled to a Verizon Wireless store located in Woodland Hills, California, to purchase new "burner" cellular phones, including a cellular phone with a phone number ending in -3853 (the "-3853 Number").

Overt Act No. 32:   On August 22, 2022, defendant BANKS stopped using the -9595 cellular phone he had used to communicate about the co-conspirators' attempt to murder T.B. and began using the -3853 Number.

21

Overt Act No. 33:   On July 6, 2023, defendant BANKS sent a group text message to co-conspirators, including defendant WILSON, stating "Deeski beat his murder he gone be more more dangerous."

Overt Act No. 34:   On August 4, 2023, defendant BANKS sent a group text message to co-conspirators, including defendant WILSON, stating that a suspected government informant and co-conspirator was "just ready to snitch blood clear as day" and "[h]e gone tell soon."

Overt Act No. 35:   On August 4, 2023, in the same group text message thread referenced above in Overt Act 34, defendant WILSON responded, "he think he can break us down."

Overt Act No. 36:   On August 4, 2023, in the same group text message thread referenced above in Overt Act 34, a co-conspirator replied, "[b]eware of everybody not just" the suspected government informant.

Overt Act No. 37:   On August 4, 2023, in the same group text message thread referenced above in Overt Act 34, defendant BANKS reassured his co-conspirators, stating, "[a]s long as we don't break they can tell em what ever."

Overt Act No. 38:   On August 5, 2023, in response to a text message from defendant WILSON stating "Niggaz out there already playing with folks name," defendant BANKS referenced the Banks Gang Enterprise's violence, stating: "Crazy blood niggas don't slide or hurt mfr leaving it all up to us."

COUNT THREE

[18 U.S.C. §§ 2261A(2)(A), (B), 2261(b)(1), 2(a), (2)(b)]

[ALL DEFENDANTS]

The Grand Jury realleges paragraphs A through C of the Introductory Allegations of this Third Superseding Indictment here.

Beginning on a date unknown, but no later than on or around August 18, 2022, and continuing to on or about August 19, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants BANKS, WILSON, LINDSEY, and HOUSTON, and co-conspirators known and unknown, each aiding and abetting the other, with the intent to kill, injure, harass, intimidate, and placed under surveillance with intent to kill, injure, harass, and intimidate T.B. and others inside T.B.'s vehicle, including S.R. (the "Victims"), used and willfully caused the use of facilities of interstate and foreign commerce, namely, airplanes, cars, cell phones, and the internet, to engage in a course of conduct that placed the Victims in reasonable fear of death or serious bodily injury, and caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to the Victims, resulting in the death of S.R.

23

COUNT FOUR

[18 U.S.C. § 1958(a)]

[ALL DEFENDANTS]

The Grand Jury realleges paragraphs A through C of the Introductory Allegations of this Third Superseding Indictment here.

A.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown, but no later than on or around November 6, 2020, and continuing to at least in or around August 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants BANKS, WILSON, LINDSEY, and HOUSTON, and co-conspirators known and unknown, conspired and agreed with each other to knowingly use facilities of interstate and foreign commerce, namely, airplanes, cars, cell phones, and the internet, with intent that the murder of T.B. be committed in violation of the laws of any State, namely, the State of California, as consideration for the receipt of, and consideration for a promise and agreement to pay, anything of pecuniary value, namely, money and downstream economic benefits, including lucrative music opportunities with OTF and placement in defendant BANKS' and OTF's music videos, in violation of Title 18, United States Code, Section 1958(a).

The use of interstate facilities to commit murder that was the object of the conspiracy resulted in the death of S.R.

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
      ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as alleged in Section B of Count Two of this Third Superseding Indictment.

24

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants BANKS, WILSON, LINDSEY, and HOUSTON, and others known and unknown, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, the following: Overt Acts One through Thirty-Eight, as alleged in Section C of Count Two of this Third Superseding Indictment.

COUNT FIVE

[18 U.S.C. §§ 1958(a), 2(a)]

[ALL DEFENDANTS]

The Grand Jury realleges paragraphs A through C of the Introductory Allegations of this Third Superseding Indictment here.

Beginning on a date unknown, but no later than on or around August 18, 2022, and continuing to on or about August 19, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants BANKS, WILSON, LINDSEY, and HOUSTON, and co-conspirators known and unknown, each aiding and abetting the others, knowingly used facilities of interstate and foreign commerce, namely, airplanes, cars, cell phones, and the internet, with intent that the murder of T.B. be committed in violation of the laws of any State, namely, the State of California, as consideration for the receipt of, and consideration for a promise and agreement to pay, anything of pecuniary value, namely, money and downstream economic benefits, including lucrative music opportunities with OTF and placement in defendant BANKS' and OTF's music videos, resulting in the death of S.R.

26

COUNT SIX

[18 U.S.C. §§ 924(c)(1)(A)(iii), (c)(1)(B)(ii), 2(a)]

[ALL DEFENDANTS]

The Grand Jury realleges paragraphs A through C of the Introductory Allegations of this Third Superseding Indictment here.

On or about August 19, 2022, in Los Angeles County, within the Central District of California, defendants BANKS, WILSON, LINDSEY, and HOUSTON, together with Co-Conspirator 2, each aiding and abetting the others, knowingly used and carried firearms, including a firearm that defendants WILSON, LINDSEY, and HOUSTON knew to be a machinegun, during and in relation to, and possessed such firearms in furtherance of, a crime of violence, namely, Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1), as alleged in Count One of this Third Superseding Indictment, and, in so doing, discharged the firearms.

27

FORFEITURE ALLEGATION ONE

[18 U.S.C. §§ 981(a)(1)(C), 924(d)(1); 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One, Four, or Five of this Third Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any such offense;

(b)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 924(d)(1); 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Six of this Third Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

//

30

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/ _____
Foreperson

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States
Attorney & Chief, Criminal
Division

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

MICHAEL J. MORSE
Special Litigation Counsel
Criminal Division

DANIEL H. WEINER
Assistant United States Attorney
Deputy Chief, Transnational
Organized Crime Section

31