CRAIG A. HARBAUGH (Bar No. 194309)
HARBAUGH LAW, PC
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Tel:    (213) 986-8656
Email: craig@harbaugh.law

Attorney for Defendant
DEANDRE WILSON

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, <br><br> v. <br><br> DURK BANKS, *et al*, *Defendant*. | No. 2:24-cr-621-MWF-2 <br><br> **DEFENDANT WILSON'S AND DEFENDANT LINDSEY'S RENEWED MOTION TO SEVER** <br><br> Hearing Date: July 1, 2026 <br><br> Hearing Time: 2:00 P.m. <br><br> Courtroom: 5A |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Defendant Deandre Wilson, by and through his counsel of record, Craig A. Harbaugh, and David Lindsey, by and through his counsel of record, Tillet J. Mills II, will and hereby do renew his motion under Federal Rule of Criminal Procedure 14 to sever their trials from that of Defendant Durk Banks. The motion is based on this Notice, the attached Memorandum of Points and Authorities, the records and files in this case, and any further evidence and argument the Court may permit.

/ / /

/ / /

/ / /

---

DEFENDANT WILSON'S AND DEFENDANT LINDSEY'S RENEWED MOTION TO SEVER

1

Counsel for the moving defendants conferred with the government under Local Civil Rule 7-3, made applicable to these criminal proceedings by Local Criminal Rule 57-1, telephonically in advance of the original severance motion and again by email on May 27-28, 2026, in advance of filing this renewed motion.

Respectfully submitted,

Dated:  June 10, 2026

/s/ Craig A. Harbaugh
CRAIG A. HARBAUGH
Attorney for Deandre Wilson

Dated: June 10, 2026

/s/ Tillet J. Mills II
Tillet J. Mills II
Attorney for David Lindsey

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................ 1

II.   PROCEDURAL BACKGROUND .............................................................. 2

III.   LEGAL STANDARD ................................................................................. 4

IV.   ARGUMENT .............................................................................................. 6

    A.   The Government's Latest Indictment Demands Reconsideration of Severance. ............................................................................................... 6

    B.   The Newly Added Murder and Attempted Murder Allegations, Which Do Not Involve the Movants, Would Unfairly Prejudice Them. ................................................................................................. 7

        1.   Labeling the Evidence Enterprise Proof Does Not Cure the Spillover Prejudice. ...................................................................... 8

        2.   The New Allegations, Combined With the Previously Admitted Violent Conduct Untethered to the Movants, Reinforce the Prejudice. ............................................................. 9

    C.   Given the Severity and Extent of the Unrelated Violent Conduct, No Limiting Instruction Can Alleviate the Prejudice. ..................... 10

    D.   This Is the Rare Case in Which Prejudice Is Inescapable Absent Severance. ............................................................................................ 11

V. CONCLUSION ............................................................................................ 11

# CASES

*Krulewitch v. United States*,
336 U.S. 440 (1949) ................................................................................4

*United States v. De Rosa*,
670 F.2d 889 (9th Cir. 1982) ..................................................................5

*United States v. Decoud*,
456 F.3d 996 (9th Cir. 2006) ..................................................................4

*United States v. DiNome*,
954 F.2d 839 (2d Cir.1992) .....................................................................5

*United States v. Donaway*,
447 F.2d 940 (9th Cir. 1971) ........................................................7, 9, 10

*United States v. Douglass*,
780 F.2d 1472 (9th Cir. 1986) ................................................................5

*United States v. Escalante*,
637 F.2d 1197 (9th Cir. 1980) .............................................................4, 9

*United States v. Fernandez*,
388 F.3d 1199 (9th Cir. 2004) ....................................................5, 7, 8, 9

*United States v. Innamorati*,
996 F.2d 456 (1st Cir. 1993) ...................................................................7

*United States v. Joetzki*, 952 F.2d 1090 (9th Cir. 1991) ................................5

*United States v. Martinez*,
657 F.3d 811 (9th Cir. 2011) ................................................................10

*United States v. Mikhel*,
889 F.3d 1003 (9th Cir. 2018) ..............................................................10

*United States v. Plache*,
913 F.2d 1375 (9th Cir. 1990) ................................................................4

*United States v. Vasquez-Velasco*,
15 F.3d 833 (9th Cir. 1994) .....................................................................8

*United States v. York*, No. 1:16-cr-00069, 2017 U.S. Dist. LEXIS 155627,
(E.D. Cal. Sep 22, 2017) ........................................................................8

*Zafiro v. United States*,
506 U.S. 534 (1993) ....................................................................2, 3, 4, 5

# RULES

Fed. R. Crim. P. 14(a).......................................................................................4

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.  INTRODUCTION

"The trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960). The Third Superseding Indictment (TSI) has triggered that duty. The Court should sever the moving defendants'[1] trial from that of Defendant Banks for three reasons.

*First*, the trial the jury will sit through will be dominated by violence that has nothing to do with the moving defendants. What had been a Los Angeles shooting case is now pleaded as a racketeering prosecution built around a multi-state history of violence: a February 2019 Atlanta attempted murder, a May 2021 Blackshear attempted murder, and a January 2022 Chicago murder. TSI ¶ 9.a-d. The indictment connects neither moving defendant to the three out-of-state shootings nor any drug activity.[2] Mr. Wilson's own alleged conduct is confined to the single conspiracy to track and kill T.B. that produced the August 2022 Los Angeles shooting.

*Second*, the new indictment restores and enlarges the one factor the Court identified when it denied the prior severance motion. The Court explained that the motion "was considerably stronger before the government's withdrawal of the 'Chicago Incident'. . ." ECF No. 386 at 4. The Chicago violence is back and elevated as part of the newly charged enterprise. The Atlanta shooting has been added beside it. The very evidence whose withdrawal mitigated prejudice in the Court's earlier analysis is now back, accompanied by still more evidence of violence.

---

[1] Defendants Deandre Wilson and David Lindsey move jointly to sever their trial from that of defendant Durk Banks. As used here, moving defendants or movants refers to Mr. Wilson and Mr. Lindsey.

[2] The only allegation tying Mr. Wilson to the Chicago murder is that he was present, weeks after the murder, at a music-video shoot where Banks displayed cash. TSI ¶ 9.b.  As addressed below. this event does nothing to change the prejudice calculus.

*Third,* no limiting instruction can shield the moving defendants from that evidence. The jury will hear extended proof of a murder and two attempted murders in two other states, then be told to set all of it aside in deciding whether the moving defendants participated in the murder-for-hire and stalking offenses charged in this district. That is the "serious risk" Rule 14 forbids. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). On this record, the re-introduction of the Chicago murder, the addition of the Atlanta attempted murder, and the numerous other violent allegations that have nothing to do with the movants make a joint trial manifestly prejudicial. With this dramatically changed evidentiary landscape, the Court's discretion now runs in only one direction: severance.

## II.   PROCEDURAL BACKGROUND

The government filed the initial indictment on October 31, 2024. ECF No. 1. It filed the Second Superseding Indictment on May 1, 2025. ECF No. 147.

Mr. Wilson moved to sever under Rule 14 on October 6, 2025. ECF No. 230. Defendants Houston and Lindsey joined. ECF Nos. 248, 249. The government opposed, ECF No. 283, and Mr. Wilson replied on November 13, 2025, ECF No. 313. On February 13, 2026, the Court ruled on Defendant Banks's motion in limine addressing the government's proposed Rule 404(b) evidence. ECF No. 380. As to a 2022 Chicago incident, the Court found that "the Government withdrew the evidence for consideration," that the Court "expressed its tentative view based on the briefing that it was inadmissible under either Rules 404(b) or 403," and that "[r]eferences to that incident will not be admissible without first obtaining the express permission of the Court." ECF No. 380 at 2. In the same order, ruling on the Second Superseding Indictment's murder-for-hire and stalking charges, the Court admitted, over objection, a substantial body of evidence concerning Defendant Banks, as proof of motive and of the background and development of the charged conspiracy. ECF No. 380 at 18-19. The admitted evidence includes surveillance footage and witness testimony of the November 2020 murder of D.B. in Atlanta, offered to show Banks's motive, and

surveillance footage and witness testimony of the May 2021 attempted killing of T.B. in Blackshear, Georgia. *Id*. at 3-4, 18-19. It also includes anonymous fan comments urging Banks to avenge D.B.'s killing, Banks's podcast response to those calls, an Instagram message and related texts in which Banks directed OTF associates against a rival, a text in which Banks wrote that he would "pipe it up," and a voice memo the government offered to show Banks's direction of how enterprise funds should be spent. *Id*. at 18.[3]

The Court heard argument on the severance motion on February 23, 2026. On February 26, 2026, the Court denied Mr. Wilson's severance motion and the joinders, and continued trial to August 20, 2026. ECF No. 386 at 1, 4. The Court found that the evidence focusing on Defendant Banks was not "so egregious or voluminous that it would 'prevent the jury from making a reliable judgment about guilt or innocence.'" *Id*. at 4 (quoting *Zafiro*, 506 U.S. at 539).

On June 3, 2026, the government filed the Third Superseding Indictment (TSI). ECF No. 423. The TSI adds a charge of murder in aid of racketeering under 18 U.S.C. § 1959(a)(1) (Count One) and conspiracy to commit stalking under 18 U.S.C. § 371 (Count Two), pleads the Banks Gang Enterprise, and charges four enterprise acts of violence: (1) 2019 Atlanta attempted murder; (2) 2022 Chicago murder (3) 2021 Blackshear attempted murder; and (4) August 2022 Los Angeles shooting that killed S.R. TSI ¶ 9.a-d. Only the Los Angeles murder is charged as a substantive offense.

The TSI does not allege that the moving defendants had any role in the February 2019 Atlanta attempted murder. It attributes that shooting to "defendant BANKS, [D.B.], and Co-Conspirator 6." TSI ¶ 9.a. Neither Mr. Wilson nor Mr. Lindsey is named. The indictment alleges no act, no statement, no travel, and no

---

[3] The Court also admitted several rap lyrics by Banks and Wilson, while excluding the music-video footage, with screenshots permitted, and a separate set of lyrics. *Id*. at 18-20.

communication related to this shooting. As to the Atlanta attempt, the enterprise proof is wholly untethered to the movants.

Regarding the 2022 Chicago murder, the TSI does not allege that Mr. Wilson committed the January 27, 2022, murder, agreed to it, knew of it in advance, helped arrange it, or shared in any reward for it. It attributes the murder to "Co-Conspirators 7 and 8." TSI ¶ 9.b. The only allegation that mentions Mr. Wilson comes weeks later. At a February 17, 2022, music-video shoot, where Banks brought roughly one million dollars in cash, "multiple members and associates of the Banks Gang Enterprise were present, including defendants WILSON and Jones, and Co-Conspirators 4 and 5."[4] *Id.* The indictment does not allege that any payment was made in Mr. Wilson's presence, that he knew that the cash was there for anything other than the video shoot, or that he took part in any discussion of a reward. It alleges only that Co-Conspirator 7 later posted a reward on social media. *Id.* The TSI does not allege that Mr. Lindsey was involved with the Chicago murder or present at the later video shoot.

## III.   LEGAL STANDARD

Even where defendants are properly joined, Rule 14(a) authorizes severance where "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). A court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. That risk is "heightened" when "many defendants are tried together in a complex case and they have markedly different degrees of culpability." *Id.*; *see also Kotteakos v. United States*, 328 U.S. 750, 774 (1946) ("The dangers of transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not taken place.").

---

[4] The caption page of the TSI no longer lists Jones as a defendant.

The duty to sever is ongoing and continues all the way through trial. *Schaffer*, 362 U.S. at 516. Renewing the motion permits the court to "assess more accurately whether a joinder is prejudicial at a time when the evidence is fully developed." *United States v. Decoud*, 456 F.3d 996, 1008 (9th Cir. 2006) (quoting *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990)).

The risk is acute in a joint conspiracy trial, where "[t]here generally will be evidence of wrongdoing by somebody" and a defendant must overcome jurors "ready to believe that birds of a feather are flocked together." *Krulewitch v. United States*, 336 U.S. 440, 453-54 (1949) (Jackson, J., concurring).

Whether a joint trial is unfairly prejudicial turns on whether the jury can "compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980). The court weighs "the complexity of the case, the total weight of the evidence against each defendant, and the effectiveness of the jury instructions," and must be "wary of situations where a jury might impute the guilt of some defendants to other defendants." *United States v. De Rosa*, 670 F.2d 889, 898 (9th Cir. 1982). A "great disparity in the amount of evidence introduced against joined defendants may, in some cases, be grounds for severance." *United States v. Douglass*, 780 F.2d 1472, 1479 (9th Cir. 1986).

A defendant claiming prejudicial spillover must "demonstrate the insufficiency of limiting instructions." *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991). Limiting instructions "often will suffice" to cure the risk, but "when the risk of prejudice is high," a court is "more likely to determine that separate trials are necessary." *Zafiro*, 506 U.S. at 539. That principle applies even in enterprise prosecutions. To be sure, RICO proof "may well entail evidence of numerous criminal acts by a variety of persons," and in that setting a spillover objection may be "at least overstated if not entirely meritless." *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir.1992). But Rule 14 still turns on whether the jury "may reasonably be

expected to collate and appraise the individual evidence against each defendant," and whether the defendant can show "with some particularity" a risk that the joint trial will compromise a specific trial right or prevent a reliable verdict. *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004).

## IV.   ARGUMENT

To be sure, the movants recount the conduct alleged against Mr. Banks solely as it bears on severance, and do not concede the truth of any of it.  But a joint trial now poses the serious risk Rule 14(a) forbids: the jury will judge the moving defendants by violence the indictment assigns to others. The TSI recasts a single charged shooting as one episode in a multi-state racketeering enterprise and surrounds the moving defendants with a murder, attempted murders, and drug trafficking it does not attribute to them.

What follows shows why severance is now required: the denial of severance rested on a record that has been eclipsed, the added violence cannot be contained by the enterprise label, and no limiting instruction can cure the prejudice. This is the rare case in which only separate trials can prevent the inevitable harm the moving defendants will face.

A.   **The Government's Latest Indictment Demands Reconsideration of Severance.**

The record on which the Court denied severance no longer exists. The Court ruled against the movants only after the government had withdrawn the Chicago incident, and after the Court had expressed its tentative view that the evidence was inadmissible. ECF Nos. 380-81 at 2. The TSI has restored that record and amplified it. The Chicago murder is not simply restored; it is formally charged against others. The Atlanta attempted murder is charged beside it. The jury will now hear a racketeering narrative of three shootings in two other states, none directly connected to the movants. TSI ¶ 9.a-d. Having superseded the indictment, the government cannot hold

the movants to a severance ruling the earlier one produced. The continuing-duty rule exists for exactly this. *Schaffer*, 362 U.S. at 516.

**B.    The Newly Added Murder Allegations, Which Do Not Involve the Movants, Would Unfairly Prejudice Them.**

The TSI now puts two more shootings before the jury, and neither involves the moving defendants. It attributes the February 2019 Atlanta attempted murder to Banks, D.B., and Co-Conspirator 6, and does not name the movants at all. TSI ¶ 9.a. It attributes the January 2022 Chicago murder to Co-Conspirators 7 and 8, not Mr. Lindsey, and ties Mr. Wilson to it only by his presence, weeks later, among dozens of people at a music-video shoot and publicly released interview where Banks openly displayed cash. TSI ¶ 9.b.[5] That attendance establishes neither Mr. Wilson's participation in the murder nor his knowledge that the cash was a reward for it. A staged cash display is a convention of the genre, not evidence that those present share in criminal proceeds.[6] Indeed, this Court has already found that videos depicting individuals "holding guns and wads of cash" are "clearly prejudicial." ECF No. 380 at 12. The jury will nonetheless hear both shootings in full, as the violent history of the alleged enterprise.

The resulting disparity is overwhelming, and it is qualitative as much as quantitative. The proof against the others is homicide evidence; the conduct charged to the moving defendants beyond the Los Angeles offense is not. The prejudice from that mismatch is most devastating "where the crimes of some defendants are more

---

[5] That interview was released to the public as *Lil Durk: Million Dollaz Worth of Game Episode 157*. Million Dollaz Worth of Game, YouTube (Mar. 10, 2022), https://www.youtube.com/watch?v=Cwncl2DSXQw.

[6] The staged display of cash is a recurring convention of hip-hop music video and media. *See* Paul Rekret, *Sensuous Abstraction: Hip-Hop, Money and the Popular*, 19 J. Cultural Econ. 86, (2026) (examining the centrality of money and the display of wealth within hip-hop as a popular and visual cultural form); Emmett H. Robinson Smith, *"I Need to Fight the Power, But I Need that New Ferrari": Conspicuous Consumption, New-School Hip-Hop and "the New Rock & Roll"* ___ (2019) (M.A. thesis, Univ. of W. Ont.), https://ir.lib.uwo.ca/etd/6322 (describing "bling" and the conspicuous display of cash, jewelry, and luxury goods as defining features of contemporary hip-hop aesthetics).

horrific or better documented than the crimes of others." *United States v. Innamorati*, 996 F.2d 456, 469 (1st Cir. 1993). And whatever Mr. Wilson's role in the Los Angeles plot, the indictment places him at none of the out-of-state shootings and does not allege that he fired a shot. The same imbalance required severance in *Donaway*, where the government's case ran more than 2,300 pages of transcript, "less than 50 pages were relevant to" the moving defendant, and the failure to sever "was an abuse of discretion." *United States v. Donaway*, 447 F.2d 940, 942-43 (9th Cir. 1971). That is the prejudice Rule 14 exists to prevent: a verdict reached by association rather than proof. A juror who sits through a detailed account of two shootings, then learns the indictment connects the moving defendants to neither, is invited to convict them for the company the government places them in rather than for the conduct they are alleged to have committed.

### 1.    Labeling the Evidence Enterprise Proof Does Not Cure the Spillover Prejudice.

Calling Atlanta, Chicago, and Blackshear enterprise acts does not make them the movants' conduct. The controlling cases hold that spillover does not require severance where it "followed from the overarching character of the criminal enterprise," *United States v. Martinez*, 657 F.3d 811, 819 (9th Cir. 2011), and that a joint trial is "particularly appropriate" where codefendants are charged with conspiracy because "much of the same evidence would be admissible against each of them in separate trials," *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004). Those principles are sound, but both depend on a premise this record does not supply: that the challenged violence is genuinely common proof against the moving defendants. It is not.

The TSI leaves the moving defendants out of the Atlanta shooting altogether, charges the Chicago murder to others and ties Mr. Wilson only to alleged after-the-fact video-shoot attendance, and charges the Blackshear attempted murder to Banks and Grant, not to the movants. It is proof that is "wholly disparate or

disproportionate." *United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994). In those circumstances, the jury cannot reasonably be expected to "collate and appraise the individual evidence against each defendant." *Fernandez*, 388 F.3d at 1241. That is not compartmentalization. It is guilt by association.

> **2.     The New Allegations, Combined With the Previously Admitted Violent Conduct Untethered to the Movants, Reinforce the Prejudice.**

The new shootings do not land on a clean slate. The Court has already admitted a substantial body of Banks's violence and motive evidence the moving defendants had no part in, including the murder of D.B. and the Blackshear attempted murder. On that record the Court denied severance, reasoning that although some of the evidence "focuses solely on Defendant Banks," none of it was "so egregious or voluminous" as to "prevent the jury from making a reliable judgment about guilt or innocence." ECF No. 386 at 4. The TSI has unsettled the premises of that ruling. It restored the Chicago murder, added the Atlanta attempted murder, elevated the Blackshear attempted murder from background to a racketeering act, and recast the enterprise's violent history as the activity underlying the new VICAR murder charge.

That is a change in kind, not merely degree. The prejudicial violence is no longer confined to proof against Defendant Banks. A murder and two attempted murders the moving defendants had no part in are now offered as the enterprise's own charged conduct, against every alleged member. The risk is imputation: that the jury will hold the movants responsible for killings they did not commit, judging them by the enterprise's violent history rather than their own conduct.

The same cumulative prejudice reaches Mr. Lindsey. The movants' connections to the charged Los Angeles plot differ, but that difference is beside the point here: the out-of-state violence is common spillover against both, charged to neither. Severance is appropriate where the indictment supplies no logical connection between a defendant and the enterprise's other charged crimes. *See United States v.*

*York*, No. 1:16-cr-00069, 2017 U.S. Dist. LEXIS 155627, at *15-16 (E.D. Cal. Sept. 22, 2017) (granting severance where the defendants were not alleged to be enterprise members and "the Indictment itself does not otherwise suggest a logical connection between the stand alone crimes with which they are charged and the [enterprise]"). Once the jury hears the accumulated proof of shootings by others, the danger is plain: each man will be judged less on his own evidence than on the violent history the government attributes to the enterprise.

When it denied severance, the Court found the reasons for it outweighed "by a wide margin." ECF No. 386 at 4. That margin was measured against a record without a separate alleged murder and attempted murder; the new allegations of violence did not simply narrow it but erased it altogether.

### C. Given the Severity and Extent of the Unrelated Violent Conduct, No Limiting Instruction Can Alleviate the Prejudice.

No limiting instruction can realistically cure that cumulative prejudice. The jury would be asked to absorb extended proof of multiple shootings and murder allegations the indictment attributes to neither moving defendant, then disregard that force when judging their individual guilt.  Whatever the movants' roles in the Los Angeles plot, that plot is the whole of what the indictment charges to them; none of the out-of-state violence is theirs.

That is not compartmentalization. It is hope.

The Ninth Circuit has recognized the prejudicial force of far less: a mere reference to a co-defendant's organized-crime ties and apparent participation in a murder was "undoubtedly harmful," *Escalante*, 637 F.2d at 1202, and even a trial court's "sincere effort" to limit the evidence could not keep a defendant from being "severely prejudiced by the evidence relevant only to the co-defendants." *Donaway*, 447 F.2d at 943. This record is more dangerous than either.

---

DEFENDANT WILSON'S AND DEFENDANT LINDSEY'S RENEWED MOTION TO SEVER

**10**

**D.      This Is the Rare Case in Which Prejudice Is Inescapable Absent Severance.**

On the prior record, the Court found a joint trial not so prejudicial as to compel severance, and it denied the motion by what it called a "wide margin." ECF No. 386 at 4. But it tied that judgment to the absence of the Chicago murder, which it said had made the motion "considerably stronger." *Id.* The government has restored that evidence and added the Atlanta shooting beside it, while none of the out-of-state violence is charged to the movants. The margin has not narrowed; it has reversed. The Court has already identified the governing test: a joint trial "so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." ECF No. 386 at 2 (quoting *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018)). A jury asked to weigh the movants' roles against three shootings in two other states, none charged to their own conduct, cannot realistically be expected to decide each defendant's guilt as an individual rather than by reference to the enterprise the Government has built around them.

That is the serious risk Rule 14 forbids: a joint trial that would prevent the jury from making a reliable judgment about guilt or innocence. On this record, the Court's discretion runs in only one direction. Mr. Wilson's and Mr. Lindsey's right to a fair trial requires severance.

## V. CONCLUSION

For the foregoing reasons, the movants respectfully request that the Court sever his trial from that of Defendant Banks.

Respectfully submitted,

Dated: June 10, 2026            */s/ Craig A. Harbaugh*
                                CRAIG A. HARBAUGH
                                Attorney for Deandre Wilson


Dated: June 10, 2026            */s/ Tillet J. Mills II*
                                Tillet J. Mills II
                                Attorney for David Lindsey