TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Chief, National Security Division
MICHAEL J. MORSE (Cal. Bar No. 291763)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
     1400/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/3535/0813
     Facsimile: (213) 894-0142
     E-mail:     ian.yanniello@usdoj.gov
                 michael.morse@usdoj.gov
                 daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-621(C)-MWF |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT WILSON'S AND DEFENDANT LINDSEY'S RENEWED MOTION TO SEVER |
| v. | |
| DURK BANKS, et al., | Hearing Date: July 1, 2026 |
| Defendants. | Hearing Time: 1:30 p.m. |
| | Location:    Courtroom of the Hon. Michael W. Fitzgerald |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Michael J. Morse, and Daniel H. Weiner, hereby files its opposition to Defendant Wilson's and Defendant Lindsey's Renewed Motion to Sever.

//

//

//

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 17, 2026                    Respectfully submitted,

                                        TODD BLANCHE
                                        Acting Attorney General

                                        BILAL A. ESSAYLI
                                        First Assistant United States
                                        Attorney

                                        IAN V. YANNIELLO
                                        Assistant United States Attorney
                                        Chief, National Security Division


                                        _____/s/_____
                                        IAN V. YANNIELLO
                                        MICHAEL J. MORSE
                                        DANIEL H. WEINER
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   FACTUAL BACKGROUND............................................3

      A.    The Court's Previous Denial of Defendants' Motion to
            Sever...................................................3

      B.    The Filing of the TSI Strengthens the Case for a Joint
            Trial...................................................5

III.  LEGAL STANDARD................................................7

IV.   ARGUMENT......................................................8

      A.    The TSI Strengthens the Case for a Joint Trial............8

      B.    Courts Routinely Address Purported Prejudice
            Associated with Past Racketeering Acts with Limiting
            Jury Instructions.......................................11

V.    CONCLUSION...................................................13

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

Richardson v. Marsh,
  481 U.S. 200 (1987) ................................................. 8

United States v. Barragan,
  871 F.3d 689 (9th Cir. 2017) ...................................... 11

United States v. Campanale,
  518 F.2d 352 (9th Cir. 1975) ...................................... 11

United States v. DeRosa,
  670 F.2d 889 (9th Cir. 1982) ...................................... 13

United States v. Donaway,
  447 F.2d 940 (9th Cir. 1971) ...................................... 10

United States v. Escalante,
  637 F.2d 1197 (9th Cir. 1980) .................................. 7, 11

United States v. Fernandez,
  388 F.3d 1199 (9th Cir. 2004) ......................... 8, 9, 10, 11

United States v. Freeman,
  6 F.3d 586 (9th Cir. 1993) ........................................ 11

United States v. Hernandez-Orellana,
  539 F.3d 994 (9th Cir. 2008) ...................................... 13

United States v. Kenny,
  645 F.2d 1323 (9th Cir. 1981) ...................................... 7

United States v. Mikhel,
  889 F.3d 1003 (9th Cir. 2018) ...................................... 7

United States v. Patterson,
  819 F.2d 1495 (9th Cir. 1987) ..................................... 11

United States v. Polizzi,
  801 F.2d 1543 (9th Cir. 1986) ...................................... 7

United States v. Savage,
  85 F.4th 102 (3d Cir. 2023) ....................................... 13

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>DESCRIPTION</u>                                                    <u>PAGE</u>

<u>United States v. Zemek</u>,
  634 F.2d 1159 (9th Cir. 1980) ................................... 10

<u>Zafiro v. United States</u>,
  506 U.S. 534 (1993) ........................................... 11

**<u>Rules</u>**

Fed. R. Crim. P. 8(a)............................................. 5

Fed. R. Crim. P. 8(b)............................................. 4

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

On June 3, 2026, the grand jury returned the Third Superseding Indictment ("TSI") charging all trial defendants with six counts, including two new crimes: (i) Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Count One), and (ii) Conspiracy to Commit Stalking, in violation of 18 U.S.C. § 371 (Count Two).[1] The TSI alleges that a subset of OTF members and associates (hereinafter the "Banks Gang Enterprise") engaged in acts and threats of violence at the direction of defendant Durk Banks, including murder and attempted murder, to maintain and enhance their status in the Banks Gang Enterprise and to be rewarded by defendant Banks through economic benefits.  The TSI alleges that defendant Wilson was a leader within the Banks Gang Enterprise, and defendant Lindsey was an associate of enterprise members who was recruited to commit the Los Angeles murder.  Accordingly, as explained below, the TSI aligns the proof against all defendants around a common racketeering enterprise, common objectives, and common evidence, including acts of violence and inculpatory admissions.

In light of the TSI, defendants Wilson and Lindsey (the "moving defendants") filed a renewed request for severance, claiming the evidence related to proving the alleged racketeering enterprise --- including the 2019 attempted murder of A.W. in Georgia and the 2022 Chicago murder of S.M. --- would only be admissible against them in a joint trial.  Moving defendants also argue that should the evidence

---

[1] The government informed defense counsel that it intended to bring these charges (including anticipated allegations regarding the murder of S.M. in Chicago and the shooting of A.W. in Atlanta) on May 13, 2026.

be admitted against them, it poses a risk "the jury will judge the moving defendants by violence the indictment assigns to others." Both arguments fail under well-established law.

First, the disputed evidence is clearly admissible against *all defendants* because it is necessary to prove the elements of VICAR murder, including the existence and operation of the alleged Banks Gang Enterprise.  See United States v. Manning, 151 F.4th 1144, 1148 (9th Cir. 2025) (elements of VICAR murder include "(1) that the criminal organization exists," "(2) the organization is a racketeering enterprise," and (3) defendants "acted for the purpose of promoting their position in the racketeering enterprise").  Because all defendants are charged with VICAR murder, the racketeering evidence is admissible against each of them at trial.

Second, the moving defendants' theory that racketeering evidence is only admissible against them if they participated in the specific acts of enterprise criminality is also without merit.  It is common in RICO and VICAR cases for enterprise evidence not to include all defendants.  See, e.g., United States v. Qaoud, 777 F.2d 1105, 1116 (6th Cir. 1985) ("[t]here is no requirement, as urged by defendants, that all conspirators be involved in each of the underlying acts of racketeering ...; all that is necessary is that the acts are connected to the affairs of the enterprise").  And to the extent racketeering evidence raises prejudice concerns, courts routinely address the issue by instructing the jury.  See Manning, 151 F.4th at 1156 (noting courts "have other means at their disposal to address undue prejudice associated with the presentation of past racketeering acts, including limiting instructions ...").

As this Court previously found, severance is unwarranted in this murder case because "the vast majority of evidence would be admissible against each defendant in separate trials." (Dkt. 386 at 3.) The filing of the TSI reinforces that conclusion. The moving defendants' renewed request for severance should be denied.

## II.    FACTUAL BACKGROUND

This prosecution arises from a coordinated, execution-style gang murder. At trial, the evidence will show that defendant Banks directed and financed six hitmen --- including defendants Wilson and Lindsey --- to travel across the country to hunt and kill an enterprise rival, T.B. Once the co-conspirators arrived in Los Angeles, the hitmen used two vehicles to stalk T.B. for hours before ambushing his vehicle at a gas station in broad daylight, murdering S.R. The TSI alleges that the hitmen committed the murder to promote their position in the Banks Gang Enterprise and because they expected and/or were explicitly promised payment.

### A.    The Court's Previous Denial of Defendants' Motion to Sever

On February 26, 2026, the Court denied defendant Wilson's initial motion to sever in a thorough, reasoned order. (Dkt. 386.) The Court described the applicable legal standard that strongly favors joinder, explaining that "joinder is the rule rather than the exception," (id. at 2 (quoting United States v. Whitworth, 856 F.2d 1268, 1277 (9th Cir. 1988)), noting that "a district court should grant a severance under Rule 14 **only** if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," id. (emphasis in original).

Applying that law, the Court found no basis for severance, even noting that granting severance "might have been an abuse of discretion the other way." (Dkt. 386 at 4.)  The Court reasoned the defendants were indicted together for their alleged participation in the same conspiracy and "the vast majority of evidence would be admissible against each defendant in separate trials."  (Id. at 34.) The Court further noted that "[s]everance is especially disfavored in conspiracy trials precisely 'because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials.'"  (Id. at 3 (quoting United States v. Fernandez, 388 F.3d 1199, 1241 (9th Cir. 2004)).)

The Court went on to reject defendants' claim that there would be "spillover prejudice" because certain evidence was admissible only against defendant Banks.  The Court reasoned that "the Motion does not successfully demonstrate the insufficiency of limiting instructions" if certain evidence is admissible only against other defendants, explaining that "none of that evidence is so egregious or voluminous that it would 'prevent the jury from making a reliable judgment about guilt or innocence.'"  (Id. (quoting Zafiro, 506 U.S. at 539.)[2]

---

[2] Defendants correctly note that the Court's order stated, "the Motion was considerably stronger before the government's withdrawal of the 'Chicago Incident' as evidence purportedly admissible under Rule 404(b) or as inextricably intertwined."  That reasoning, however, was applicable to the prior indictment.  As set forth above, the TSI charges *all* defendants with VICAR murder, which makes the alleged enterprise evidence --- including the 2022 Chicago murder --- direct evidence against all defendants.

4

**B. The Filing of the TSI Strengthens the Case for a Joint Trial**

On June 3, 2026, the grand jury returned the TSI that added two additional charges against the trial defendants: VICAR murder, and a second conspiracy. The remaining four counts of the indictment were previously charged in the SSI.

The TSI alleges that the Banks Gang Enterprise --- of which defendant Wilson is alleged to be a core member who, among things, recruited defendant Lindsey to commit the Los Angeles murder --- committed violence to promote the enterprise and to seek revenge against its rivals, including members of the Gangster Disciples gang and individuals who harmed, attempted to harm, or disrespected members and associates of the Banks Gang Enterprise. For example, following the November 2020 killing of D.B --- who was an alleged member of the Banks Gang Enterprise and the Black Disciples gang, and a close friend and associate of defendant Banks --- defendant Banks and other enterprise members conspired to murder those whom they perceived as responsible for D.B.'s death, including T.B., as alleged in Counts One through Six of the TSI.

The TSI also alleges that defendant Banks and the leadership of the Banks Gang Enterprise, including defendants Wilson and Co-Conspirator 5, recruited other gang members and/or affiliates to commit violence for the enterprise, including defendants Lindsey and Jones, and Co-Conspirator 2.

The TSI further alleges that defendant Banks, the leader of the Bank's Gang Enterprise, communicated with enterprise members via group text messages, including defendant Wilson, about an enterprise member (a shooter in the 2022 Los Angeles murder of S.R.) that the

5

enterprise suspected of "snitch[ing]."  Specifically, in August 2023, defendant Banks messaged defendant Wilson and other co-conspirators saying the enterprise member and suspected government informant was "just ready to snitch...clear as day," to which defendant Wilson replied that [the suspected government informant] think[s] he can break us down."  Defendant Banks later replied, reassuring the group of enterprise members, saying "[a]s long as we [the enterprise] don't break they can tell [']em what ever."

As proof of the racketeering enterprise, the TSI further alleged specific predicate acts of enterprise violence.  Specifically, it alleges that defendants Banks, Wilson, Lindsey, and Houston, and others, including various members and associates of the Banks Gang Enterprise, engaged in acts of violence in furtherance of the enterprise, including but not limited to the attempted murder of A.W. in Atlanta, Georgia on or about February 5, 2019, and the murder of S.M., a rival gang member in Chicago, Illinois, on or about January 27, 2022.

As alleged in the TSI, the Banks Gang Enterprise would engage in the racketeering activity for the purpose of, among other things: (i) preserving, protecting, and promoting the enterprise, enhancing the reputation of its members and associates, and enriching defendant Banks and the enterprise's members and associates, including by commercializing the enterprise's violence in public social media, music videos, and lyrics; (ii) recruiting other individuals to join the enterprise; (iii) intimidating and retaliating against defendant Banks' and the Banks Gang Enterprise's rivals; and (iv) preserving and expanding the power and influence of the enterprise in Chicago and Atlanta, among other places.

As detailed below, because the government must prove the existence and operation of the alleged racketeering enterprise to meet its burden on Count One, evidence providing the racketeering activities of the Banks Gang Enterprise is admissible against all defendants.  See Manning, 151 F.4th at 1148.

**III.  LEGAL STANDARD**

Defendants bear the burden of making a "strong showing" to justify severance.  United States v. Kenny, 645 F.2d 1323, 1345 (9th Cir. 1981).  Severance is not warranted unless a joint trial would violate a defendant's substantive rights, such as confrontation of witnesses, presenting a legally permissible individual defense, and being tried by a properly instructed jury.  United States v. Escalante, 637 F.2d 1197, 1202 (9th Cir. 1980).

A district court does not abuse its discretion unless "a joint trial [is] so manifestly prejudicial as to require the . . . exercise [of] discretion in but one way, by ordering a separate trial." United States v. Mikhel, 889 F.3d 1003, 1046-47 (9th Cir. 2018) (quotation omitted).  "[S]erious consideration" of judicial economy is appropriate.  United States v. Polizzi, 801 F.2d 1543, 1553 (9th Cir. 1986).

Four factors aid courts in weighing severance: "(1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendant] could show, with some particularity, a risk that the joint trial would compromise a

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Fernandez, 388 F.3d 1199, 1241 (9th Cir. 2004) (affirming denial of severance in joint RICO/VICAR trial), rev'd on other grounds, 425 F.3d 1248 (9th Cir. 2005).  The "first two factors are the most important in this inquiry."  Id.

As the Court already found when denying defendants' initial motion to sever, severance is especially disfavored in conspiracy trials like this one.  Joint trials are "particularly appropriate where the co-defendants are charged with conspiracy."  Id. at 1242. In such cases, prejudice from a joint trial is less likely because "much of the same evidence would be admissible against each [defendant] in separate trials."  Id.  Joint trials are also favored to promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  Richardson v. Marsh, 481 U.S. 200, 210 (1987).

**IV.   ARGUMENT**

**A.    The TSI Strengthens the Case for a Joint Trial**

The renewed motion is based on the faulty premise that the disputed evidence --- core enterprise evidence related to the 2019 attempted murder of A.W. and the 2022 murder of S.M. --- would be admissible against them only in a joint trial.  Not so.

As set forth above, each defendant is charged with VICAR murder and conspiracy counts that expressly incorporate the Banks Gang Enterprise allegations.  To prove VICAR murder against each defendant, the government must establish multiple elements, including that the alleged enterprise existed, the enterprise "is a racketeering enterprise," and that the defendants committed the

murder to promote their position in the enterprise "or as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from" the enterprise.  18 U.S.C. § 1959; Manning, 151 F.4th at 1148; Ninth Circuit Model Criminal Jury Instructions, No. 18.8 (2022 ed.) [Violent Crime in Aid of Racketeering Enterprise].

As a result, whether the moving defendants are tried with their enterprise counterparts or individually, the enterprise evidence they claim is unduly prejudicial would nonetheless be admissible against them because it establishes the enterprise- and racketeering-related elements of VICAR murder.  The evidence proves the enterprise structure that enabled, promoted, and rewarded the moving defendants' charged conduct; the acts of co-participants that establish the enterprise and relationship between the co-conspirators; and the full scope of the criminal organization the moving defendants allegedly joined, assisted, or benefited from.  Because this evidence is cross-admissible, there can be no Rule 14 prejudice.  See United States v. Vasquez-Velasco, 15 F.3d 833, 844 (9th Cir. 1994) (joinder was appropriate where there was a substantial overlap in the evidence required to prove the existence of a cartel and its racketeering activities); Fernandez, 388 F.3d at 1242 ("[T]he concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials.").

Indeed, courts routinely deny severance in cases involving much more significant evidentiary issues, charging complexity, and purported prejudicial violence.  For example, the Ninth Circuit affirmed denial of severance in a complicated case involving 11 co-

9

defendants, different conspiracies with different goals, and several predicate RICO or stand-alone VICAR offenses involving sub-groups of the co-defendants, reasoning that "the joint trial did not affect the jury's ability to evaluate each defendant's culpability individually."  Fernandez, 388 F.3d at 1243.  In another complicated RICO trial, which involved "acts and threats of murder, arson and bribery (in violation of state law) and gambling, mail fraud, extortion and obstructing communication to criminal investigators (in violation of federal law)," the Ninth Circuit affirmed denial of severance.  United States v. Zemek, 634 F.2d 1159, 1162-63, 1181 & n.30 (9th Cir. 1980).

The moving defendants' reliance on United States v. Donaway, 447 F.2d 940 (9th Cir. 1971) further undermines their position.  The charges in Donaway did not involve VICAR or RICO, and instead arose from a conspiracy related to "fixing" horse races that essentially had nothing to do with Donaway.  447 F.2d at 942-43.  Indeed, although Donaway was initially charged with conspiracy, that charge *was dismissed* before trial and Donaway's only connection to the scheme was an allegation that he placed a single bet for a much more culpable defendant.  Id. at 942.  Under those circumstances, and faced with evidence of "doping" horses and other "fixing" acts completely unrelated to the movant, as well as a replacement trial judge less aware of the danger of his joinder, the movant was "severely prejudiced by the evidence relevant only to the co-defendants."  Id. at 943.

Unlike Donaway, the moving defendants here are charged with VICAR murder and conspiracy counts for their direct participation in the Los Angeles murder.  Moreover, as discussed above, the disputed

10

evidence is admissible against the moving defendants, and thus the risk of prejudice at issue in Donaway is simply not present here. Indeed, as the Ninth Circuit explained in United States v. Patterson, 819 F.2d 1495, 1503 (9th Cir. 1987), Donaway is an example of a "rare case[]" justifying severance where there is "[g]reat disparity in the amounts of evidence introduced against joint defendants"; however, severance is unwarranted even in such cases when the "district court uses great diligence in instructing the jury to separate the evidence" to "neutralize[]" any prejudicial effect.  Id.

In short, under clearly established and binding Ninth Circuit authority, defendants have failed to establish any basis to grant severance.  Fernandez, 388 F.3d at 1243; see also United States v. Barragan, 871 F.3d 689, 701-02 (9th Cir. 2017) (joinder proper in eight-defendant RICO trial involving drug trafficking, extortion, robbery, assault, attempted murder, and firearm offenses); United States v. Campanale, 518 F.2d 352, 359 (9th Cir. 1975) (same in eight-defendant RICO trial involving labor union payments, extortion, picketing for personal profit, and obstruction).

### B.   Courts Routinely Address Purported Prejudice Associated with Past Racketeering Acts Through Jury Instructions

As in most cases, the "drastic measure[]" of severance is not required here, where jury instructions will "suffice to cure any risk of prejudice."  Zafiro, 506 U.S. at 537.  The Ninth Circuit has "repeatedly held that a district court's careful and frequent limiting instructions to the jury, explaining how and against whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from a joint trial."  Fernandez, 388 F.3d at 1243; see United States v. Nelson, 137 F.3d 1094, 1108 (9th

11

Cir. 1998) ("The Supreme Court has held that the risk of prejudice posed by joint trials can be cured by proper jury instructions"); United States v. Dazey, 403 F.3d 1147, 1165 (10th Cir. 2005) (noting that even in such complex cases with many defendants and markedly different degrees of culpability "severance is not necessarily required because 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice'") (citations omitted).

Here, moving defendants argue that severance is necessary because there is a risk "the jury will hold the movants responsible for killings they did not commit."  (Mot. at 13.)  This argument fails because it ignores that courts routinely address the very same issue through limiting and cautionary jury instructions.[3]  As the Ninth Circuit explained in United States v. Manning, "district courts have other means at their disposal to address undue prejudice associated with the presentation of past racketeering acts, including limiting instructions and the sequencing of the government's case." 151 F.4th 1144, 1156 (9th Cir. 2025).  Indeed, in Manning the district court gave "cautionary instructions to the jury throughout the government's presentation of prior" racketeering acts, and then gave a robust jury instruction at the end of trial making clear that the jury "may consider this evidence only for the limited purpose of determining whether or not the government has proven the alleged

---

[3] There is no requirement that all defendants participate in the alleged racketeering acts. See also United States v. Qaoud, 777 F.2d 1105, 1116 (6th Cir. 1985) (VICAR statute does not require "that all conspirators be involved in each of the underlying acts of racketeering, or that the predicate acts be interrelated in any way; all that is necessary is that the acts are connected to the affairs of the enterprise"); Odom v. Microsoft Corp., 486 F.3d 541, 552–53 (9th Cir. 2007) (en banc) (Same).

12

racketeering enterprise." Id. at 1150.  Moving defendants have not shown why similar cautionary instructions would be insufficient here.

In short, there is no reasonable basis to believe the jury will not be able to compartmentalize the evidence and follow the Court's limiting instructions.  See United States v. DeRosa, 670 F.2d 889, 898-99 (9th Cir. 1982) (affirming denial of defendants' severance motions after dismissal of count that formed the original basis for defendants' joinder (RICO), because of compartmentalizable and compelling evidence against each defendant, district court instructions, and closing arguments that "effectively sorted out the evidence against "each defendant"); United States v. Savage, 85 F.4th 102, 119 (3d Cir. 2023) (citing cases and noting repeated affirmance of "convictions of defendants who were jointly tried alongside co-defendants charged with more serious or additional crimes, so long as the jury could compartmentalize the evidence"); United States v. Joetzki, 952 F.2d 1090, 1094 (9th Cir. 1991) (to warrant severance, defendant must "demonstrate the insufficiency of limiting instructions given by the judge").

**V.    CONCLUSION**

In the end, the moving defendants have not met their burden to show, with "particularity, a risk that the joint trial would compromise a specific trial right ... or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Hernandez-Orellana, 539 F.3d 994, 1001 (9th Cir. 2008).   District courts routinely provide cautionary and clarifying instructions to ensure the jury understands and obeys the law.  Nothing more is needed here, and the Court should accordingly deny the renewed motion.