CRAIG A. HARBAUGH (Bar No. 194309)
HARBAUGH LAW, PC
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Tel: (213) 986-8656
Email: craig@harbaugh.law

Attorney for Defendant
DEANDRE DONTRELL WILSON

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* <br><br> v. <br><br> DURK BANKS, *et al*, *Defendant*. | No. 2:24-cr-621-MWF-2 <br><br> **DEFENDANT WILSON'S BRIEF IN SUPPORT OF REQUEST FOR REVIEW OF DETENTION ORDER** |

Defendant Deandre Dontrell Wilson, by and through his counsel of record, Craig A. Harbaugh, files this brief in support of his application for this Court to review/reconsider the magistrate judge's detention order in this matter.

Respectfully submitted,

Dated: June 24, 2026     */s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH
Attorney for Deandre Dontrell Wilson

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.  PROCEDURAL BACKGROUND ...................................................................... 2

III. LEGAL STANDARD ......................................................................................... 3

IV.  ARGUMENT ...................................................................................................... 4

    A.  Wilson Has Rebutted the Presumption .................................................... 4

    B.  Wilson Is Not a Flight Risk ...................................................................... 5

    C.  The Government Cannot Prove Danger by Clear and Convincing Evidence ... 6

       1.  The Magistrate Judge's Dangerousness Finding Is Unsupported by the Record ........................................................................................ 6

       2.  The Enhanced Charges and New Labels Do Not Meet the Burden .............. 8

    D.  The Government's Late Charges Threaten to Extend Wilson's Detention for Reasons of the Government's Own Making ................................................ 9

    E.  The Secured Package and Conditions Assure Appearance and Safety ........... 11

V.   CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Colorado v. New Mexico*, 467 U.S. 310 (1984) ............................................................. 3

*United States v. Aslanian*, 644 F. Supp. 3d 589 (C.D. Cal. 2022) ............................... 3

*United States v. Barone*, 387 F. App'x 88 (2d Cir. 2010)............................................. 8

*United States v. Chimurenga*, 760 F.2d 400 (2d Cir. 1985)......................................... 3

*United States v. Diaz-Hernandez*, 943 F.3d 1196 (9th Cir. 2019) ............................... 3

*United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991) ....................................... 3, 6, 8

*United States v. Hir*, 517 F.3d 1081 (9th Cir. 2008) ..............................................*passim*

*United States v. Koenig*, 912 F.2d 1190 (9th Cir. 1990) .............................................. 3

*United States v. Liebowitz*, 669 F. App'x 603 (2d Cir. 2016) ....................................... 8

*United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) ............................... 2, 3, 11

*United States v. Rojas-Contreras*, 474 U.S. 231 (1985) ............................................. 9

*United States v. Salerno*, 481 U.S. 739 (1987)........................................................... 2

*United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015) ............................... 2, 4

*United States v. Stone*, 608 F.3d 939 (6th Cir. 2010)................................................. 3

*United States v. Stricklin*, 932 F.2d 1353 (10th Cir. 1991) ......................................... 3

*United States v. Torres*, 995 F.3d 695 (9th Cir. 2021) ........................................... 8, 10

*United States v. Torres-Rodriguez*, 930 F.2d 1375 (9th Cir. 1991) ............................. 9

*United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990) ..................................... 4, 10

*United States v. Ward*, 63 F. Supp. 2d 1203 (C.D. Cal. 1999)..................................... 3

*United States v. Watkins*, 940 F.3d 152 (2d Cir. 2019)................................................ 7

**Statutes**

18 U.S.C. § 3142................................................................................................*passim*

18 U.S.C. § 3145................................................................................................... 2

**Rules**

Fed. R. Evid. 404 ................................................................................................ 9

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.  INTRODUCTION

The magistrate judge got the detention decision wrong. The record, rather than rhetoric, demonstrates that Wilson is neither a risk of flight nor danger to the community. The order found him a flight risk in direct contravention of Ninth Circuit precedent, treating his well-documented family and community ties to Chicago, which the law credits as mitigating nonappearance, as proof that he would flee. It did so even though Pretrial Services twice concluded that a suitable bond could mitigate the risk of nonappearance.

The magistrate judge's finding of dangerousness is equally unsupported. The instant charges, though serious, are not evidence. The claimed "criminal history involving weapons, drugs, violence, and obstructing justice" does not withstand the record. ECF No. 54 at 3. It comprises a single stale weapon possession misdemeanor conviction, committed when Wilson was eighteen. The drug, violence, and obstruction contention rests on no conviction whatsoever. Each matter ended in acquittal, dismissal, stricken charge, or no charge at all. The pending Chicago weapons case carries little weight where another court has already released Wilson on bond. Unemployment does not equal dangerousness.

Because review is *de novo*, the order's flawed reasoning does not control. The sole issue is whether the government has carried its burden to prove by clear and convincing evidence that Wilson poses a danger.[1] It has not. The government's case rests on two contentions: that Wilson committed the charged murder while on release for a prior murder charge, and that the instant offense is too grave for any condition. The superseding indictment, which now folds that murder into a VICAR count, is offered to reinforce both.

---

[1] In its opposition before the magistrate judge, the government argued dangerousness alone. The order's flight finding thus rests on a ground the government did not develop.

Neither contention carries the government's burden. The instant murder allegation is unproven and disputed; a contested allegation of guilt cannot be assumed true to detain a defendant before trial. The while-on-release point adds nothing: it assumes Wilson committed the charged murder, the fact in dispute, and treats that same unproven act as the violation of his release. The fact that the prior murder charge ended in full acquittal only further undermines the government's argument.

Gravity alone does not show that no condition will reasonably assure Wilson's appearance and the community's safety. Congress drew that line itself: it attached a presumption to a closed list of offenses, and the new charges are not on it. § 3142(e)(3). If severity alone supplied the presumption, the charge would decide what the Bail Reform Act assigns to the conditions analysis. Recharging the same conduct adds allegations, not evidence.

The new charges do worse than fail as proof. They delay. By adding years-old events two months before trial, the government has expanded an already complex case and threatens to prolong a detention that already runs nineteen months. Due process would not charge that delay to Wilson. Detention prolonged by the government's own charging choices presents an independent due process problem warranting release.

Wilson seeks restrictive conditions that carry severe consequences if violated. Those would include 24-hour home detention with GPS monitoring at a third-party custodian's residence and strict pretrial supervision in the Northern District of Illinois. Three close family members have pledged a bond totaling $140,000, $40,000 of it secured by a family member's home. Those conditions reasonably assure both his appearance and the safety of the community.

## II.  PROCEDURAL BACKGROUND

Wilson was ordered detained at his initial appearance on November 15, 2024, and has remained in custody for more than nineteen months. ECF Nos. 53, 54. The operative charging document is now the Third Superseding Indictment (TSI), returned

June 3, 2026. ECF No. 423. Among other counts, it adds a Violent Crimes in Aid of Racketeering (VICAR) murder charge, 18 U.S.C. § 1959(a)(1). It carries over the § 924(c) firearm count, which triggers the presumption under § 3142(e)(3)(B).

On June 3, 2026, the magistrate judge denied reconsideration, directing that Wilson remain detained "as previously ordered," and issued no written findings. ECF No. 421. The findings under review are those stated in the November 15, 2024, order. ECF No. 54 at 3. Trial is set for August 20, 2026, and Wilson's renewed motion to sever is pending. ECF No. 430. Wilson now seeks *de novo* review under 18 U.S.C. § 3145(b).

### III.   LEGAL STANDARD

"In our society, liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). The Bail Reform Act requires release on the "least restrictive condition or combination of conditions" that will reasonably assure appearance and permits detention only where none will. *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985); 18 U.S.C. § 3142(c), (e). "Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos-Flores,* 794 F.3d 1088, 1090 (9th Cir. 2015).

This Court reviews the detention order *de novo*, "with no deference" to the magistrate judge's findings. *United States v. Koenig,* 912 F.2d 1190, 1192-93 (9th Cir. 1990). To justify detention, the government must prove flight risk by a preponderance and danger by clear and convincing evidence, *Motamedi*, 767 F.2d at 1406, meaning proof that danger is "highly probable," *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984), shown "with a high degree of certainty," *United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir. 1985); *accord United States v. Aslanian*, 644 F. Supp. 3d 589, 595 (C.D. Cal. 2022). The four § 3142(g) factors govern an "individualized evaluation," *United States v. Diaz-Hernandez,* 943 F.3d 1196, 1198 (9th Cir. 2019), in which "the weight of the evidence is the least important," *United*

*States v. Gebro,* 948 F.2d 1118, 1121 (9th Cir. 1991). A presumption shifts only production, which is "not heavy." *United States v. Stricklin,* 932 F.2d 1353, 1355 (10th Cir. 1991); *accord United States v. Stone,* 608 F.3d 939, 945 (6th Cir. 2010). The burden of persuasion stays with the government and does not shift to the defendant, even after a prior detention order. *United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). To the extent reopening is required, only material new information is needed, which the new surety package supplies. § 3142(f)(2); *see United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999).

## IV.  ARGUMENT

### A.  Wilson Has Rebutted the Presumption

The presumption reaches a single count. Section 3142(e)(3) attaches its rebuttable presumption only to a closed list of enumerated offenses, and of the charges here, only the § 924(c) firearm count, Count Six, is on it. § 3142(e)(3)(B). The murder-in-aid-of-racketeering, stalking, conspiracy, and murder-for-hire counts, whatever their gravity, are not enumerated and carry no presumption; on those counts the government bears its full § 3142(g) burden with no presumption against release. Even the firearm presumption imposes only a burden of production, not a heavy one, and Wilson has met it.

He has produced evidence that conditions will reasonably assure both his appearance and the community's safety: the secured $140,000 surety package, 24-hour home detention with GPS at a third-party custodian's residence, supervision transferred to the Northern District of Illinois, and the absence of any allegation that he directed, supplied, drove, or carried out the violence. That is well beyond the "some evidence" the law requires. The burden of persuasion thus returns to the government, with the presumption surviving as one § 3142(g) factor. *Hir*, 517 F.3d at 1086. The government cannot carry that burden, on flight or danger.

## B. Wilson Is Not a Flight Risk

The burden on flight was the government's, by a preponderance. *Motamedi*, 767 F.2d at 1406. The government did not meet it, because it did not argue flight. Its opposition below pressed dangerousness alone and offered no fact, analysis, or authority directed to nonappearance, resting on the bare statutory recital that no condition could assure Wilson's appearance. Gov't Opp. at 3-4, ECF No. 420.

The magistrate judge's flight-risk finding does not save the government. The order rested that finding on Wilson's deep ties to Chicago, treating them as a reason to detain him. ECF No. 54 at 3. That inverts Ninth Circuit law. The Act does not require ties to the district of prosecution; "community" "embraces both the community in which the charges are brought and also a community in the United States to which the defendant has ties." *Santos-Flores*, 794 F.3d at 1090 (quoting *United States v. Townsend,* 897 F.2d 989, 995 (9th Cir. 1990)). Wilson's ties are in Chicago, where his mother, six siblings, and three children live, and where he would reside under Northern District of Illinois supervision. Ninth Circuit law makes those ties a reason for release; the order made them grounds for detention.

The order's other nonappearance factors fail one by one. It treated Wilson's unemployment as a reason to flee; but lack of a job says little about whether a person appears, and any concern about stability is met by home detention, a third-party custodian, and sureties who have staked their own home and income. It called his residence unstable; but Wilson would live with his mother and stepfather, who pledge the property securing the bond and stand ready as custodians, and a home pledged to the bond is not unstable. And it invoked his passport and foreign travel; but Wilson last traveled abroad in February 2024 and returned. A man who leaves the country and comes back has shown he will not flee, the more so once he surrenders his travel documents and accepts a travel restriction.

Wilson's own record confirms the point. While on bond in the pending Chicago case, he has appeared at every hearing. Pretrial Services twice concluded that a bond would assure his appearance, and the government's opposition barely contests it.

## C.   The Government Cannot Prove Danger by Clear and Convincing Evidence

The government must prove danger by clear and convincing evidence, to a high degree of certainty, and it cannot, for two reasons. First, the magistrate judge's detention order rested its dangerousness finding on a record that does not support it. Second, although the government has enhanced the charges and recharacterized Wilson's status, the new allegations do not meet that heightened burden.

### 1.   The Magistrate Judge's Dangerousness Finding Is Unsupported by the Record.

The lower court based its dangerousness finding on a "criminal history involving weapons, drugs, violence, and obstructing justice." ECF No. 54 at 3. The record refutes the characterization category by category.

*Weapons*: the only conviction is a single misdemeanor for unlawful carry/possession of a firearm, committed in 2009 when Wilson was eighteen, for which he received ten days in custody and eighteen months of probation; every other weapons entry was dismissed or is the unproven 2023 charge addressed below. *Drugs*: there is no drug conviction, only misdemeanor marijuana-possession arrests, each stricken, the most recent over a decade ago, with no use after 2012 and no allegation of trafficking. *Violence*: there is no violent conviction, only a 2014 prosecution for murder, attempted murder, and aggravated discharge in which Wilson was acquitted on all count, a 2008 armed-robbery arrest, when Wilson was seventeen, on which he was released without charge.[2] *Obstruction*: there is no obstruction conviction, only a single 2011 felony charge that was dismissed.

---

[2] Wilson also had a 2010 reckless-conduct misdemeanor charge, with no indication that violence was involved.  In any event, it was dismissed *nolle prosequi*.

What is left is two misdemeanor convictions: the 2009 illegal carry offense and a 2014 criminal trespass, which is not a crime of violence or a weapons, drug, or obstruction offense. Two stale misdemeanors, an acquittal, and dismissed charges are not clear and convincing evidence of danger. The presumption of innocence forecloses treating an acquitted, dismissed, or never-filed charge as proof of dangerousness. "That an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely . . . to commit a crime if he is released from custody." *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006).

The government cannot fill that gap, and its own danger argument shows why. It would treat Wilson's presence in California in 2022 as proof that he committed the charged offense, then use the assumed guilt to manufacture a violation of his release in the 2014 case. ECF No. 420 at 1. That presumes the very guilt the government must prove. The 2014 matter ended in acquittal, and the government identifies no violation of any release condition other than the charged offense itself. That is not evidence of danger. It is the absence of it.

The magistrate judge's order also pointed to the pending Chicago charge. It is a 2023 weapons charge on which an Illinois court released Wilson on bond and supervises him still, without any alleged violation. A defendant another court already trusts to conditions is a poor candidate for a finding that no conditions can work. The charge is presumed innocent, and the conduct charged here, in August 2022, predates the 2023 arrest by roughly a year, so that case cannot show Wilson offended while on release for it.

The order's final danger ground is Wilson's unemployment. Employment is a characteristic the Act directs the court to weigh, § 3142(g)(3)(A), but it speaks to stability and appearance, not danger. Treating it as proof of dangerousness asks a flight-related characteristic to do work it cannot, and any concern about unstructured time is answered by a custodian and home detention.

## 2. The Enhanced Charges and New Labels Do Not Meet the Burden.

The government has since enhanced the charges, adding murder in aid of racketeering, and the offense is serious. But gravity is not proof of danger, and an indictment's labels are not evidence; the government must still prove danger by clear and convincing evidence, *Hir*, 517 F.3d at 1086, and the statute "neither requires nor permits a pretrial determination of guilt," *Gebro*, 948 F.2d at 1121. Wilson concedes no allegation, and nothing here is directed at any codefendant; the Act requires an individualized determination, so the question is only what the indictment attributes to Wilson. The latest indictment lumps him into the enterprise's "leadership" and alleges that he, with others, "would promise to pay" a bounty. TSI, Introductory Allegations ¶ B.4; id., Count Two, Means ¶ 2. But the same indictment names another defendant the "leader" and Wilson only a "member or associate," id., Introductory Allegations ¶ B.1. The overt acts bear out that lesser role: his one recruiting act is alleged to be on another's behalf, id., Overt Act 8, and the bounty was placed by others, with Wilson alleged only to have been told of it, id., Overt Act 2. A conclusory label and a collective "would promise to pay," tied to no specific act of Wilson's, are not clear and convincing evidence of danger.

The conduct the indictment attributes to Wilson is recruitment, travel, and presence. TSI, Overt Acts 8, 10-12, 18, 20-23, 27-28. What it does not allege is decisive: it does not allege that Wilson procured the firearms, the machinegun, the masks, the cars, or the hotel, that he drove or rode in the shooting vehicle, that he fired a weapon, or that he was present at the shooting. *Id.*, Overt Acts 14-17, 26. The inquiry is confined to charged conduct; "involves" in § 3142(f)(1) does not reach "related, but uncharged, conduct." *United States v. Watkins,* 940 F.3d 152, 164 (2d Cir. 2019).

Even on the government's own theory, there is no enterprise left for Wilson to rejoin: every other defendant charged, including the one it names the enterprise's leader, is in custody, and the target survived. A dismantled enterprise poses no

continuing threat, and codefendants' detention cannot substitute for the individualized determination the Act requires. The 2023 text messages reflect concern about cooperation with law enforcement, but Wilson is not charged with obstruction and is not alleged to have contacted or threatened any witness; the no-contact and communications conditions answer whatever weight they carry. The weight of the evidence, the least important factor, *Gebro*, 948 F.2d at 1121, rests largely on cooperating witnesses, received with caution.

The two cases the government offers prove the opposite, detaining defendants for what this record lacks: in *United States v. Barone,* 387 F. App'x 88, 89-90 (2d Cir. 2010), the defendant possessed "two firearms, ammunition, a bulletproof vest, a 'how to' guide for conducting assassinations, and $50,000 in cash"; and in *United States v. Liebowitz,* 669 F. App'x 603, 604 (2d Cir. 2016), the record included the defendant's recorded inquiry whether 'DNA is enough' to establish that the intended victim was deceased. The indictment alleges no weapon in Wilson's hands and no statement by him about planning or confirming a killing; the acts of ordering, financing, driving, and firing it assigns to others. To detain a man whose alleged role is recruitment and presence, on a charge the government must still prove and prior charges a judge rejected, is detention without a basis the statute recognizes.

**D.   The Government's Late Charges Threaten to Extend Wilson's Detention for Reasons of the Government's Own Making**

Wilson has been detained more than nineteen months, and the government's own charging decision is poised to make that detention far longer. Whether prolonged detention offends due process turns on "(1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention." *United States v. Torres,* 995 F.3d 695, 708 (9th Cir. 2021). The second factor decides this case. In *Torres*, the detention survived because the delay was attributable to the pandemic, not to any prosecutorial contribution. *Id.* at 708-09.

Here, any added delay would stem from the government's choice to enlarge the case on the eve of trial.

The conduct the government has now added is old, and it added it late. The TSI, returned June 3, 2026, just over two months before trial, pleads as enterprise acts of violence a February 2019 attempted murder in Atlanta and a January 2022 murder in Chicago. TSI ¶ 9.a-b.[3] Both predate the August 2022 conduct charged here, and law enforcement investigated each for years before the original indictment issued in October 2024. The government could have charged them then but chose not to. It later offered the Chicago incident as Rule 404(b) evidence, withdrew that proffer in February 2026, ECF No. 380 at 2, then charged it as an enterprise act in the June indictment, adding Atlanta with it. Nothing in the record indicates new evidence prompted the change. The government simply made a different choice, late.[4]

The consequence is a serious risk of delay, all of it the government's making. A case enlarged to take in two more incidents, on a schedule fixed before they were added, brings new discovery and motion practice, and a superseding indictment that substantially enlarges a case on the eve of trial can require a continuance to protect the defense's preparation, occasioned by the government's charging choice, not the defense's. *United States v. Rojas-Contreras,* 474 U.S. 231, 240-41 (1985) (Blackmun, J., concurring); *see United States v. Torres-Rodriguez,* 930 F.2d 1375, 1385 (9th Cir. 1991). If that comes to pass, Wilson's detention extends well past the nineteen months he has served on a clock the government's belated charging decision reset.

---

[3]The indictment also pleads a May 2021 attempted murder in Blackshear, Georgia, as an enterprise act. TSI ¶ 9.c. That incident stands differently: the Court admitted evidence of it over objection before the superseding indictment issued, ECF No. 380 at 18-19, so its inclusion does not impose the same need to prepare to meet evidence the defense had not expected.

[4]On May 13, 2026, the government advised defense counsel that it was considering a superseding indictment to be returned by June 3, 2026, the date the Third Superseding Indictment in fact issued. The record does not reflect when the government decided to revive the Chicago incident it had withdrawn months earlier (ECF No. 380 at 2), or to add the Atlanta incident it had never charged.

None of the added violence involves Wilson. The indictment attributes the Atlanta and Chicago incidents to others and places Wilson at none of them. TSI ¶ 9.a-b. He has moved to sever, ECF No. 430; absent severance, he would remain in custody while a case built around others' alleged conduct works toward trial. The defendant least proximate to the new allegations would bear the heaviest cost of the delay the government created.

Wilson does not yet know whether a continuance will be required; he has not reviewed the discovery the new charges entail, and the Court has not addressed the schedule. But if one becomes necessary, the government's late charges will have forced the choice the Constitution should not require: accept a continuance, and a detention already exceeding nineteen months grows longer, deepening the due-process concern the Fifth Amendment guards against, *Torres*, 995 F.3d at 708; or hold the trial date, and go forward without the time the Sixth Amendment guarantees to prepare a defense to events newly placed before the jury. Wilson need not make that choice. Release on conditions removes the harm, whatever the trial schedule.

**E.   The Secured Package and Conditions Assure Appearance and Safety**

Three sureties have committed: Wilson's stepfather, a $40,000 bond secured by his Illinois home (roughly $40,000 to $60,000 in equity); his cousin, a $50,000 bond; and his sister, a $50,000 bond. These are family members risking their own property and income. "The purpose of bail is not served unless losing the sum would be a deeply-felt hurt to the defendant and his family . . . so severe that defendant will return for trial rather than flee." *Townsend*, 897 F.2d at 994. Wilson knows what his family has staked for him, and he will not let people of modest means bear that loss.

Wilson submits to a third-party custodian and 24-hour home detention with continuous GPS, surrender of all travel documents and a travel restriction, no contact with any victim, witness, or codefendant except through counsel, electronic-communications monitoring, a firearms prohibition, transfer of supervision to the Northern District of Illinois, and any further condition the Court orders. These

conditions are externally administered and verifiable. They do not, like the conditions in *Hir*, turn on the defendant's "good faith." *Hir*, 517 F.3d at 1092. The Act requires reasonable assurance, not a guarantee. *Motamedi*, 767 F.2d at 1405.

## V.  CONCLUSION

The government cannot name a danger or a flight risk the proposed conditions leave unanswered, and its danger case asks the Court to presume the guilt it must prove. On this record, release is not a risk. It is what the statute requires. Wilson respectfully requests release on the conditions set forth above, or such other conditions as the Court deems appropriate.

Respectfully submitted,

Dated: June 23, 2026

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH
Attorney for Deandre Dontrell Wilson