CRAIG A. HARBAUGH (Bar No. 194309)
HARBAUGH LAW, PC
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Tel:     (213) 986-8656
Email: craig@harbaugh.law

Attorney for Defendant
DEANDRE WILSON

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*,<br><br>v.<br><br>DURK BANKS, *et al*,<br>*Defendant*. | No. 2:24-cr-621-MWF-2<br><br>**DEFENDANT WILSON'S AND DEFENDANT LINDSEY'S REPLY IN SUPPORT OF RENEWED MOTION TO SEVER**<br><br>Hearing Date: July 1, 2026<br><br>Hearing Time: 2:00 P.m.<br><br>Courtroom: 5A |

Defendant Deandre Wilson, by and through his counsel of record, Craig A. Harbaugh, and David Lindsey, by and through his counsel of record, Tillet J. Mills II, hereby file this reply in support of the Renewed Motion to Sever.

Respectfully submitted,

Dated: June 24, 2026       */s/ Craig A. Harbaugh*
                          CRAIG A. HARBAUGH
                          Attorney for Deandre Wilson

Dated: June 24, 2026       */s/ Tillet J. Mills II*
                          Tillet J. Mills II
                          Attorney for David Lindsey

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

The government's opposition rests on a single premise: because each defendant is charged with VICAR murder, the enterprise evidence is cross-admissible, so "there can be no Rule 14 prejudice." Opp. 9. That is not the law. Rule 14 asks whether, on this record, the jury can "collate and appraise the individual evidence against each defendant." *United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004). Proving that the enterprise committed murders is different from proving that the moving defendants did, and cross-admissibility to establish the enterprise element does nothing to stop a jury from sliding from the first proposition to the second. If the enterprise label alone defeated Rule 14, no defendant charged under VICAR could ever sever. The Ninth Circuit holds otherwise: "[g]reat disparity in the amounts of evidence introduced against joint defendants may, in rare cases, be grounds for severance." *United States v. Patterson*, 819 F.2d 1495, 1503 (9th Cir. 1987).

This is that rare case. Mr. Wilson is charged in a single shooting, the August 2022 California murder of S.R., and he is not alleged to have fired a shot. TSI ¶ 9.d. The jury that decides his guilt will also hear, in full, a murder in Illinois and two attempted murders in Georgia, none of which the indictment charges to Mr. Wilson or Mr. Lindsey. TSI ¶ 9.a-c. The conduct charged to the movants beyond the substantive offenses is not homicide. The violence the government will build around them is. Proof of that kind, untethered to the defendant who must sit through it, is the "wholly disparate or disproportionate" evidence Rule 14 reaches. *United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994).

The government leans on the Court's prior severance denial as dispositive here. But the Court's reasoning points the other way now. The Court tied that ruling to a record from which the Chicago murder had been withdrawn and called the motion "considerably stronger" with that evidence in the case. ECF 386 at 4. The Third Superseding Indictment (TSI) has restored the Chicago murder and added the Atlanta

attempted murder the Court never weighed, on top of the Blackshear attempted murder, already admitted over objection and now pleaded as an act of the enterprise. ECF 380 at 18-19; TSI ¶ 9.a-c. The prejudice the Court assessed was a fraction of what the jury will now hear: a murder and two attempted murders, none charged to the movants, while they defend a single shooting in Los Angeles.

No instruction can close that gap. It asks jurors to do the impossible: hear detailed proof of a murder and two attempted murders allegedly committed by others, use that violence to understand the enterprise, but not let it bear on their judgment of the movants' guilt. That is the kind of "mental gymnastics" that is "beyond, not only their powers, but anybody else's." *United States v. Gallo*, 668 F. Supp. 736, 753 (E.D.N.Y. 1987) (quoting *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932)). The Court must sever.

## II.    ARGUMENT

### A. The New Indictment Has Not Only Restored the Prejudice the Government Withdrew but Reversed the Balance.

The government's response to the changed posture is that the Court's earlier reasoning "was applicable to the prior indictment." Opp. 4 n.2. Exactly. That is why the renewed motion matters. Severance turns on the case as it now stands, not as it once did. A renewed motion allows the Court to assess more accurately whether joinder is prejudicial once the evidence is fully developed. *United States v. Decoud*, 456 F.3d 996, 1008 (9th Cir. 2006). And the duty to sever continues throughout the case whenever prejudice appears. *Schaffer v. United States*, 362 U.S. 511, 516 (1960).

The government also invokes the Court's observation that granting severance "might have been an abuse of discretion the other way." Opp. 4. True, the Court made that statement under a different evidentiary landscape, where the Chicago murder had been withdrawn. ECF 386 at 4. It was addressing a single Los Angeles shooting, not

the multi-state enterprise the TSI now charges: a murder and two attempted murders the movants are not charged with committing.

The government's position cannot be squared with the Court's own prior view of this evidence. Before the government withdrew the Chicago murder, the Court expressed its tentative view that this homicide was inadmissible under Rule 404(b) or Rule 403. ECF 380 at 2. Exclusion under Rule 403 rests on a determination that the evidence's prejudice substantially outweighs its probative value. The TSI does not lessen that prejudice because it no limited to Mr. Banks. The government answers that because the Chicago murder has now been pled as an act of the enterprise, it can be offered as "direct evidence against all defendants." Opp. 4 n.2. While the theory of admissibility may have changed, the prejudice stays the same. Indeed, now that the government has resurrected the Chicago murder as part of the new VICAR charge, the prejudice is far worse. Evidence the Court was prepared to keep from the jury for all defendants as too prejudicial is now evidence the jury must hear, developed in full, because the government chose to charge the enterprise.

The Atlanta attempted murder makes the point sharper still. The government never offered it as prior-bad-act evidence, so the Court had no occasion to weigh its prejudice; the TSI now pleads it as an act of the enterprise. TSI ¶ 9.a. The prior denial confronted nothing like this much violence, this much spillover, or this much risk of guilt by association.

**B.** **Charging Out-Of-State Violence As Enterprise Proof Does Not Make It the Movants' Conduct, And Cross-Admissibility Does Not Dissolve Rule 14.**

Contrary to the government's suggestion, Opp. 6, charging the movants under a racketeering enterprise does not make the enterprise's violence their own. The opposition lists the movants among those who "engaged in acts of violence . . . including" the Atlanta and Chicago killings, but the indictment attributes both to others. TSI ¶ 9.a-b. The statute keeps the two apart. To convict the movants of

VICAR murder, the government must prove that the enterprise existed and engaged in racketeering activity, and that each defendant committed the charged violent crime for an enterprise purpose. 18 U.S.C. § 1959(a); *United States v. Manning*, 151 F.4th 1144, 1148 (9th Cir. 2025); *United States v. Vasquez-Velasco*, 15 F.3d 833, 844 (9th Cir. 1994). The Atlanta, Chicago, and Blackshear shootings, committed by others, bear on the enterprise. They are not proof that the movants committed the only violent act charged to them, the Los Angeles murder. TSI ¶ 9.d. Cross-admissibility does not end the analysis. Even if all the enterprise evidence were admissible at a severed trial, a premise the movants need not accept, Rule 14 would still ask whether the jury can separate that proof as it relates to each defendant. *See Vasquez-Velasco*, 15 F.3d at 845-46. The government treats admissibility as dispositive and never weighs whether the accumulation of this violence is unfairly prejudicial. Opp. 8-10.

A defendant with a discrete alleged role need not be forced to sit through the full presentation of an enterprise's violent history merely because some background proof overlaps. In *Burke*, the court severed a defendant from co-defendants charged with murders as racketeering predicates because, although the government would present "some overlapping proof concerning [the movant's] alleged status . . . as background," the proof needed to convict him was "substantially different" from the proof needed to convict on the decades-long RICO conspiracy. *United States v. Burke*, 789 F. Supp. 2d 395, 400 (E.D.N.Y. 2011). The government will say the movants here, unlike that defendant, are charged with the enterprise crime itself. But that distinction changes only the label, not what the jury will hear. The enterprise element requires proof that the enterprise had a racketeering character. Proving that the movants joined a single shooting does not require trying Atlanta, Chicago, and Blackshear in full.

The danger is greatest when the spillover is violent. Relief by severance "may be more appropriate when the unrelated evidence reflects activities of a violent nature

---

DEFENDANT WILSON'S AND DEFENDANT LINDSEY'S REPLY IN SUPPORT OF RENEWED MOTION TO SEVER

4

because the risk of substantial prejudice is greater." *United States v. Cardascia*, 951 F.2d 474, 483 (2d Cir. 1991).

That the movants face a violent charge of their own does not lessen that danger; it sharpens it. Mr. Wilson is accused in a single shooting he is not alleged to have fired. Around that one charge, the jury will hear a second murder and two attempted murders committed by others. The risk is not that the jury confuses one killing for another, but that the violence it cannot attribute to the movants carries over to the shooting it can. The Second Circuit confronted that danger where the proof against some defendants included "vicious murders." *United States v. DiNome*, 954 F.2d 839, 844-45 (2d Cir. 1992).

The government's newest authority, *Manning*, confirms the point rather than defeating it. Opp. 12. That case holds that a court may not bifurcate the elements of a single VICAR count into separate phases. *Manning*, 151 F.4th at 1151-56. It is not a severance decision, and it did not address whether one defendant may be tried alongside violence the indictment assigns to others. What *Manning* does say about prejudice cuts against the government: district courts must address the "undue prejudice associated with the presentation of past racketeering acts" through "limiting instructions and the sequencing of the government's case." *Id*. at 1156. A decision telling trial courts to manage that prejudice does not hold that it disappears.

The government's remaining authorities do not meet the motion. *Qaoud* holds only that not every conspirator must take part in every racketeering act. *United States v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir. 1985) and the government offers *Odom* for the same proposition. *Odom v. Microsoft Corp.*, 486 F.3d 541, 552-53 (9th Cir. 2007) (en banc) (quoting *Qaoud*). The movants concede they may be charged without having joined the out-of-state shootings. The question Rule 14 poses is different: whether a jury can fairly judge the movants after hearing those shootings proved in detail. The government cites no case that says it can.

## C.    No Limiting Instruction Can Cure the Prejudice, And the Government's Own Authorities Prove It.

The government's answer to the prejudice is the availability of limiting instructions. Opp. 11–13. But the cases it cites explain why an appellate court may affirm after a jury has already shown that it separated the proof. *Fernandez* relied on the jury's "failure to convict all defendants on all counts." *United States v. Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004). Barragan relied on partial acquittals as "demonstrating its ability to compartmentalize." *United States v. Barragan*, 871 F.3d 689, 701–02 (9th Cir. 2017). They do not tell this Court what to do now, before trial, where it cannot look to any verdict, let alone a split one, for confirmation. Rule 14 requires prevention, not hindsight.

The same is true of *Zemek* and *Campanale*. Those cases addressed a narrower question on appeal: whether the district court's denial of severance had to be reversed under the deferential abuse-of-discretion standard. *See United States v. Zemek*, 634 F.2d 1159, 1168-70 (9th Cir. 1980); *United States v. Campanale*, 518 F.2d 352, 359 (9th Cir. 1975). As the Ninth Circuit later summarized, the question on review is whether the joint trial was "so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018). That is not the question now before the Court. The question now is whether, on this indictment and this evidentiary picture, Rule 14 permits the risk to be run in the first place.

*Campanale* itself supplies the standard that matters here. It asks whether "it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct." *Campanale*, 518 F.2d at 359. That cannot happen once the jury has heard, in detail, that the enterprise the

movants allegedly joined, committed a murder and two attempted murders that the movants did not.

The government closes with *De Rosa*. Opp. 13. But *De Rosa* affirmed because the defendant's role involved "discrete, simple transactions" the jury could "easily compartmentalize," and because the evidence against him was "so compelling" that guilt by association was "remote." *United States v. De Rosa*, 670 F.2d 889, 897–99 (9th Cir. 1982). *De Rosa* also instructs when "the count that formed the original basis for joinder is dismissed," the trial court must be "particularly sensitive to the possibility of prejudice." *Id*. at 897 (cleaned up). Neither feature is present here. The movants' alleged role is embedded in the larger enterprise narrative, and the spillover consists of three shootings they are not charged with committing.

Nor can limiting instructions solve that problem. The government's answer is that the Court can give careful and detailed instructions, as if the Court need only tell the jurors to use the Chicago murder and the Atlanta and Blackshear attempted murders to understand the enterprise then keep that same violence from bearing on the movants, who are charged only with a different shooting. But detail solves a different problem. It cures a jury's misunderstanding of how it may use evidence; it does nothing for a jury's inability to use it that way. The jurors may understand the instruction perfectly and still be unable to follow it, because no wording lets a juror who has heard three shootings proved in detail set them aside when judging the single shooting charged to the movants.

The government dismisses the significance of *Donaway* because this case is different. Opp. 10-11. It is different—but in a way that favors severance. *Donaway* found prejudicial spillover necessitating severance in a case involving fixing horse races and a movant whose role was limited to a single bet. *United States v. Donaway*, 447 F.2d 940, 942–43 (9th Cir. 1971). In stark contrast, the government insists the movants must stand trial amid proof of a murder and two attempted murders they are not charged with committing. That *Donaway* did not arise under RICO or VICAR

does not help the government. The enterprise label does not reduce the prejudice of uncharged homicides; it is how those homicides reach the jury. Nor does the government's admissibility argument answer *Donaway*, which turned on the scale of the disparity creating a serious risk of guilt by association, not on whether the spillover evidence was admissible. 447 F.2d at 942–43. If severance was required in *Donaway*, it is required here.

## V.      CONCLUSION

For the foregoing reasons, Wilson and Lindsey respectfully request that the Court sever their trial from that of Defendant Banks.

Respectfully submitted,

Dated: June 24, 2026          */s/ Craig A.  Harbaugh*
                              CRAIG A.  HARBAUGH
                              Attorney for Deandre Wilson


Dated: June 24, 2026          */s/ Tillet J. Mills II*
                              Tillet J. Mills II
                              Attorney for David Lindsey

DEFENDANT WILSON'S AND DEFENDANT LINDSEY'S REPLY IN SUPPORT OF RENEWED MOTION TO SEVER

8