BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorney
Chief, National Security Division
DANIEL H. WEINER (Cal. Bar No. 329025)
MICHAEL J. MORSE (Cal. Bar No. 291763)
Assistant United States Attorneys
    1400/1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3667/0813/7367
    Facsimile: (213) 894-0142
    E-mail:   ian.yanniello@usdoj.gov
            daniel.weiner@usdoj.gov
            michael.morse@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>DEANDRE WILSON,<br>  aka "Lil Durk,"<br>  aka "Mustafa Abdul Malak,"<br>  aka "Blood,"<br><br>       Defendant. | No. CR 24-621(C)-MWF-2<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT WILSON'S APPLICATION FOR REVIEW OF DETENTION ORDER |

     Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Daniel H. Weiner, and Michael J. Morse, hereby files its opposition to defendant's Application for Review of the Detention Order.

//

//

This filing is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 29, 2026                    Respectfully submitted,

                                        BILAL A. ESSAYLI
                                        First Assistant United States
                                        Attorney

                                        IAN V. YANNIELLO
                                        Assistant United States Attorney
                                        Chief, National Security Division


                                        _/s/_____
                                        IAN V. YANNIELLO
                                        MICHAEL J. MORSE
                                        DANIEL H. WEINER
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendant Wilson is an extreme danger to the community and a flight risk.  He must remain detained pending trial.

At its core, this case is about a well-funded and violent gang that promotes and commits violence for power, influence, and revenge. Defendant is charged with being a leader within the gang who recruited other hitmen to travel across the country to hunt and kill a rival. After defendant and the other hitmen arrived in California, they used two vehicles to track and stalk the rival from the night of August 18 until the murder occurred in the late afternoon on August 19. Specifically, after tracking the rival to a busy gas station in Beverly Hills, three of defendant's co-conspirators opened fire with multiple firearms --- including a machine gun --- missing their intended target and instead murdering S.R.

This brazen and calculated murder, coupled with other aggravating facts before the Court --- including that defendant is alleged to have committed **this murder** while on pretrial release **for another murder** --- show there are no conditions or combination of conditions to ensure defendant's appearance or the safety of the community.  The government respectfully requests that the Court affirm the magistrate judge's ruling and order that defendant remain detained pending trial.

//

//

//

**II.   BACKGROUND**

**A.   Defendant Is Charged with Being a Leader Within a Violent Racketeering Enterprise**

The Third Superseding Indictment ("TSI") charges defendant and three co-conspirators with crimes arising from S.R.'s murder: Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Count One); Conspiracy to Commit Stalking, in violation of 18 U.S.C. § 371 (Count Two); Stalking Resulting in Death, in violation of 18 U.S.C. §§ 2261A(2)(A), (B), 2261(b)(1) (Count Three); Conspiracy to Commit Murder-for-Hire Resulting in Death, in violation of 18 U.S.C. § 1958(a) (Count Four); Murder-for-Hire Resulting in Death, in violation of 18 U.S.C. § 1958(a) (Count Five); and Use, Carry, and Discharge of Firearms and a Machinegun in Furtherance of a Crimes of Violence (Count Six).

**1.   Defendant Is Alleged to be a Leader of the Gang**

The TSI alleges the following: Defendant Banks formed a violent racketeering enterprise (i.e., the Banks Gang Enterprise) by recruiting prominent members and affiliates of the Black Disciples gang, including defendant Wilson, from different neighborhood blocks in and around the Chicago area.[1]  (TSI, p. 3, ¶ 2.)  Defendant Wilson was a leader within the violent organization who recruited other gang members to commit violence on behalf of the enterprise.  Indeed, anticipated witnesses and text messages will show defendant recruited two of the hitmen who traveled to California to kill defendant Banks'

---

[1] The Black Disciples gang is a well-known and violent gang primarily located in and around Chicago, Illinois.  The TSI alleges that defendants Banks and Wilson, and Co-Conspirators 2 through 6 were members, associates, or affiliates of the Black Disciples gang. (TSI, p. 4, ¶ 2.)

and the enterprise's rival, T.B., resulting in the premeditated murder of S.R.  (TSI, p. 4, ¶ 4; Count Two, ¶¶ B.1 through B.2 & Overt Act No. 8.)

This murder --- and other enterprise violence --- was fueled by defendant Banks' power, money, and influence, including payments for vehicles and guns to be used to commit violence, and by using money to incentivize murder and other violence against rivals. Specifically, the TSI alleges that defendant Banks would place bounties on individuals that he and other enterprise members wanted to kill and reward individuals who were willing to commit violence against defendant the enterprise's rivals.  (TSI, pp. 8-9, 13.)  For example, based on an alleged bounty offered by defendant Banks and enterprise members, Co-Conspirators 7 and 8 ambushed and murdered Victim 2 --- a rival gang member --- as he left the Youth Peace Center in Chicago on January 27, 2022. (TSI, pp. 6-7.)  After the murder, Co-Conspirators 7 and 8 explicitly discussed obtaining payment from defendant Banks and the enterprise; Co-Conspirator 7 traveled to meet with enterprise members, including defendants Banks and Wilson; and Co-Conspirator 7 then subsequently displayed the money he received for the killing in a social media post while playing defendant Banks' lyrics about stalking a rival or "opp." (Id.)  Materially, as of May 20, 2026, Co-Conspirators 7 and 8 have pleaded guilty to committing the bounty murder.  See United States v. Montgomery-Wilson, et. al., CR 23-546 (N.D. Ill), Dkts. 178 [4/16/26 Change of Plea Hearing for defendant Montgomery-Wilson]; 179 [Montgomery-Wilson Plea Agreement]; 186 [5/20/26 Change of Plea Hearing for defendant Powell]; 187 [Powell Plea Agreement].

       2.   Defendant Recruited Shooters and Was a Direct Participant in S.R.'s Ambush Killing

On August 18, 2022, defendant and his co-conspirators learned that T.B. was in Los Angeles.  In response, defendant allegedly recruited others to commit the murder and then traveled to California to kill T.B.  After arriving in Los Angeles, defendant and his co-conspirators used two cars to track, stalk, and attempt to kill T.B., as T.B. drove around Los Angeles with his entourage, including S.R.  After hours of stalking T.B. and his companions, three of defendant's co-conspirators cornered T.B. at a crowded gas station on the afternoon of August 19.  There, the co-conspirators ambushed T.B.'s vehicle and fired multiple rounds towards T.B.'s car, striking and killing S.R.

Surveillance video shows that less than 45 minutes later --- around the time when S.R.'s body was being removed from a vehicle --- defendant was ordering food and laughing with his co-conspirators. (See Dkt. 420 at 2 (screenshot of video depicting defendants Wilson and Lindsey).)  After ordering food, defendant and four of the direct participants in the murder traveled to San Diego to catch a flight back to Chicago.

       3.   Defendant was on Pretrial Release for a Separate Murder When the Co-Conspirators Allegedly Murdered S.R.

As set forth in the United States Probation & Pretrial Services Report, defendant was on pretrial release on Illinois state murder charges when he is alleged to have committed the Los Angeles murder. (11/15/24 USPPS Report at 5.)  Then, after defendant was acquitted of the Illinois murder charges on July 6, 2023, defendant Banks

celebrated, telling defendant Wilson and other enterprise members, "Deeski [defendant Wilson] beat his murder he gone be more [] dangerous." (TSI, p. 21, Overt Act No. 33.)  Consistent with this text message, defendant was arrested twelve days later by the Chicago Police Department and charged with multiple weapons violations, including aggravated unlawful use of a weapon. (11/15/24 USPPS Report at 5.)  Those charges are still pending. (Id.)  Defendant's criminal history also includes a series of arrests for gun- and drug-related crimes, among others, and misdemeanor convictions for illegally possessing a gun and for trespass. (11/15/24 USPPS Report at 3-5.)

**B.    Defendant is Twice Ordered Detained Pending Trial**

After two separate hearings, Judge Audero ordered defendant detained based on danger to the community and flight risk. (See Dkts. 53 [11/15/24 Minute Order], 54 [11/15/24 Detention Order]; 421 [6/3/26 Minute Order].)  Judge Audero determined defendant was an ongoing danger based on the nature of the alleged criminal activity, defendant's criminal history, including the pending firearm offense in Illinois, and defendant's unemployment status.[2] (Dkt. 54 at 3.)  Judge Audero also found defendant was a risk of non-appearance based on his lack of ties to the Central District, his unstable residence, his unemployment status, and his recent international travel to the Dominican Republic in February 2024. (Id.)

---

[2] In November 2024, defendant told pretrial services that he had "been unemployed for the past three years and is not receiving any income." (11/15/24 USPPS Report at 2.)

## III.  ARGUMENT

### A.    Defendant is Presumed to Be a Flight Risk and Danger

Although review of the magistrate court's detention order is de novo, this Court "is not required to start over . . . and proceed as if the magistrate's decision and findings did not exist."  United States v. Koenig, 912 F.2d 1190, 1192-93 (9th Cir. 1990).

A defendant must be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is thus appropriate for a defendant who is either a danger to the community or a flight risk.  United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985).

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)."  United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019).  Those factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence;
>
> (2) the weight of the evidence against the defendant;
>
> (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history; and
>
> (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986) (per curiam) (citation omitted).

In cases involving certain violent offenses, including the firearms count set forth in Count Six, the Bail Reform Act established a presumption that a defendant is both a flight risk and a danger to the community.  18 U.S.C. § 3142(e)(3)(B).  Once the presumption is triggered, the defendant has the burden of producing or proffering evidence to rebut the presumption.  United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989); United States v. King, 849 F.2d 485, 488 (11th Cir. 1988).  Congress intended that the statutory presumptions would have a practical effect.  United States v. Jessup, 757 F.2d 378, 382 (1st Cir. 1985), abrogated on other grounds, United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990).  The presumptions do not disappear when a defendant meets his or her burden of producing rebuttal evidence.  United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1986); United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986); United States v. Ward, 63 F.Supp.2d 1203, 1209 (C.D. Cal. 1999); United States v. Clark, 791 F. Supp. 259, 260 (E.D.W.A. 1992). The presumptions remain in the case as evidentiary findings militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g).  Dominguez, 783 F.2d at 707.

**B.   Defendant's Murder Charges Justify Pretrial Detention**

Defendant is charged with committing a brazen, premeditated murder as part of his role in a violent racketeering enterprise.  He is alleged to be a leader within the gang enterprise that used defendant Banks' vast resources to promote and commit violence, including the murder of S.R. in Los Angeles.  The TSI alleges that defendant directly participated in the Los Angeles murder and that he

recruited others to join by promising them that defendant Banks would pay a steep reward for traveling to California to kill T.B.

This is not a close case.  The evidence of defendant's guilt is significant and includes anticipated testimony from multiple witnesses, text messages showing defendant recruited others to commit the crime, location data showing defendant's and his co-conspirators' stalking of T.B. and S.R., video showing defendant and co-conspirators shortly after the murder, and other evidence establishing defendant's leadership role in the alleged gang enterprise.  Defendant's willingness to commit murder while on pretrial release **for a separate murder** demonstrates a complete disregard for the law and establishes that he poses an extraordinary danger to the community and that no conditions can assure his appearance for trial in this case.

C.    **Defendant's Criminal History and the Punishment He Faces Further Warrant Continued Detention**

As Judge Audero reasoned when finding defendant was a danger to the community, defendant's criminal history further establishes his dangerousness.  Defendant has been arrested 19 times (including this case), has misdemeanor convictions for illegal gun possession and trespass, and has a pending felony case in Illinois.  Defendant's criminal history, taken together with the aggravating allegations contained in the TSI, warrant his continued detention in this case. See United States v. Liebowitz, 669 F. App'x 603, 604 (2d Cir. 2016) (affirming detention order even though murder-for-hire defendant "had never previously been charged with a violent crime" because the "record contains compelling evidence of [defendant]'s participation in the charged crimes and his knowledge and acquiescence in the use

of violence to commit them" which "admits a clear and compelling finding that he posed a threat of future harm"); United States v. Barone, 387 F. App'x 88, 89-90 (2d Cir. 2010) (affirming detention order for defendant whose danger to the community "was clearly and convincingly evidenced by . . . his readiness to commit the charged murder-for-hire").

Moreover, defendant faces a lengthy prison sentence --- mandatory life imprisonment.  The severity of the potential penalty underscores his risk of non-appearance and the threat of danger he poses to those persons involved in his prosecution.  See Liebowitz, 669 F. App'x at 605 ("The lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee."); see also United States v. Brennerman, 705 F. App'x 13, 15 (2d Cir. 2017) (affirming denial of bail based on risk of non-appearance where defendant facing fraud charges that exposed him to a "range of 57 to 71 months' imprisonment").  No amount of money --- or conditions of release --- will adequately protect the community or prevent the defendant from fleeing prosecution.  See United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008) (affirming district court's denial of proposed $600,000 secured bail package based on risk defendant posed to the community).

**IV.  CONCLUSION**

Defendant's release would pose a grave risk to the safety of the public, and witnesses and potential witnesses in this case.  No condition or combination of conditions can ensure defendant's appearance or mitigate his danger to the community.  The Court should order defendant detained.