CRAIG A. HARBAUGH (Bar No. 194309)
HARBAUGH LAW, PC
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Tel: (213) 986-8656
Email: craig@harbaugh.law

Attorney for Defendant
DEANDRE WILSON

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

DURK BANKS, *et al*.,
*Defendants*.

No. 2:24-cr-621-MWF-2

**DEFENDANT DEANDRE WILSON'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT OF ACQUITTAL**

Hearing Date: October 28, 2026

Hearing Time: 2:00 p.m.

Courtroom: 5A

Defendant Deandre Wilson, by and through his counsel of record, Craig A. Harbaugh, submits this reply in support of his renewed motion under Federal Rule of Criminal Procedure 29 and in response to the government's omnibus opposition, ECF No. 749. The reply is based on the attached Memorandum of Points and Authorities, the trial record, the records and files in this case, and any further argument the Court may permit.

Dated: October 21, 2026

Respectfully submitted

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH
Attorney for Deandre Wilson

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................ 1

II. ARGUMENT ........................................................................ 3

A.The Opposition Defends Count Three With an Intent Toward Anyone in the Car, the Formulation the Court Said Would Not Suffice. ................. 3

1.An Intent Toward "Any of Them" Is Not the Focus on a Particular Person the Court Required. ............................................ 4

2. Conspiracy and Aiding and Abetting Liability Require Someone Who Stalked Robinson, and the Opposition Names No One. ........... 6

3.Nothing Before the Gunfire Reached Robinson, and Bowman Is Not a Relative Whose Distress the Statute Counts. .......................... 7

B.The Opposition Concedes That the Course of Conduct Went Undetected, and None of Its Answers Overcomes That Concession. .......... 8

1.Mr. Wilson Does Not Argue That Bowman Had to Know Each Act; He Argues That the Effect Must Come From the Course of Conduct, Not the Shooting That Ended It. ......................................... 9

2.The Reasonable-Fear Route Has No Attempt Clause, and Bowman Could Not Fear a Following the Opposition Concedes Went Undetected. ................................................................ 10

3.All Three of the Government's Emotional-Distress Theories Rest on the Single Act of the Shooting, Which Is Legally Insufficient... 11

4.Count One Fails Because an Agreement to Follow Bowman Unseen Is Not an Agreement to Place Him in Fear or Cause Him Distress. ........................................................................ 13

C.The Gunfire Cannot Both Complete the Stalking and Cause the Death That Results From It. ................................................................ 13

III. CONCLUSION ........................................................................ 14

# TABLE OF AUTHORITIES

## CASES

*Apprendi v. New Jersey*,
530 U.S. 466 (2000) .......... 14

*Dubin v. United States*,
599 U.S. 110 (2023) .......... 10, 13

*Ocasio v. United States*,
578 U.S. 282 (2016) .......... 13

*Pinkerton v. United States*,
328 U.S. 640 (1946) .......... 6

*United States v. Conlan*,
786 F.3d 380 (5th Cir. 2015) .......... 3, 7

*United States v. Elkins*,
725 F. Supp. 3d 570 (N.D. Tex. 2024), *aff'd in part, vacated in part*, 161 F.4th 899 (5th Cir. 2025), *cert. denied*, No. 25-1061 (U.S. Oct. 5, 2026) .......... 9

*United States v. Gonzalez*,
905 F.3d 165 (3d Cir. 2018) .......... 14

*United States v. Macias-Valencia*,
510 F.3d 1012 (9th Cir. 2007) .......... 10

*United States v. Nevils*,
598 F.3d 1158 (9th Cir. 2010) (en banc) .......... 3

*United States v. Resendiz-Ponce*,
549 U.S. 102 (2007) .......... 11

*United States v. Shrader*,
675 F.3d 300 (4th Cir. 2012) .......... 3

*United States v. Uhlenbrock*,
125 F.4th 217 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2853 (2025) .......... 12

## STATUTES

18 U.S.C. § 115(c)(2) .......... 8
18 U.S.C. § 1028A(a)(1) .......... 13
18 U.S.C. § 2261(b) .......... 2, 4, 7, 10, 11, 13, 14
18 U.S.C. § 2261A .......... *passim*
18 U.S.C. § 2266(2) .......... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government's opposition[1] does nothing to salvage the convictions. It begins with the verdict itself: "any rational juror could conclude, and in fact 12 jurors did conclude," that Mr. Wilson committed the charged offenses.[2] That is where Rule 29 begins, not where it ends. The question is whether the evidence meets each element. It does not. The statute requires that the course of conduct, not the shooting that ended it, produce the fear or distress. Nothing the crew did before the gunfire reached Bowman or Robinson. The government concedes the point: the conspirators' "days-long surveillance and following of Bowman went undetected."[3]

Unable to overcome that concession, the opposition falls back on the gunfire. Its answer on every count comes back to the shooting at the gas station.[4] But the shooting cannot supply the intent toward Robinson, the course of conduct toward Bowman, and the death that results.

*First*, on Count Three, the stalking of Robinson, despite never disputing that the instruction required intent "as to a particular person (for this Count, Saviay'a Robinson),"[5] the government now defends the verdict with an intent "to kill any of them,"[6] which is a category, not a person. The government's own cooperator told the jury that Robinson was not "the intended target that day,"[7] and the opposition names no one who formed the required intent toward him. Count Three therefore fails.

---

[1] Government's Omnibus Opposition to Defendants' Motions for Judgment of Acquittal, or for a New Trial (Opp.), ECF No. 749; Defendant Wilson's Renewed Motion for Judgment of Acquittal (Mot.), ECF No. 735.
[2] Opp. 9.
[3] Opp. 15.
[4] Opp. 13-16.
[5] Jury Instr. No. 26; 12RT 17:7-11, 17:15-23, 18:6-7.
[6] Opp. 16.
[7] 8RT 276:9-10.

*Second*, on Count Two, the stalking of Bowman, the opposition argues that awareness does not matter because "the statute criminalizes attempt."[8] But the attempt language appears only in the emotional-distress provision. The reasonable-fear provision requires proof that Bowman himself was afraid, as the government acknowledges.[9] And the government never told the jury that the conspirators attempted to cause emotional distress. When it read the third element in closing, it left the attempt language out.[10] An attempt to cause distress requires an effort to cause it, and the opposition identifies none but the shooting itself.[11] Its own account describes an intent to kill and a course of conduct it calls "clandestine,"[12] and neither is an effort to cause distress. That leaves the shooting alone, which cannot carry Count Two. Count One, the conspiracy, collapses too. On the government's own account, the agreement was to follow Bowman unseen and kill him, not to cause him fear or distress.

*Third*, the opposition says the death-results argument has "no basis in the text of the statute."[13] The text says otherwise. The death-results enhancement in Section 2261(b)(1) applies only when death "results" from the stalking offense. The same gunfire cannot both complete the offense and cause the death said to result from it.

The government charged murder-for-hire, and the jury acquitted on those counts.[14] What remains are stalking convictions whose effect element rests on a single act: by the opposition's own account, nothing but the shooting ever reached the men in the Escalade.[15] No stalking conviction can rest on the effect of a single act. Because the evidence does not meet the statute, the Court must enter judgments of acquittal.

---

[8] Opp. 11.
[9] 12RT 11:22-23, 12:6-7, 12:15-22; Jury Instr. No. 21.
[10] 13RT 33:18-24.
[11] Opp. 15.
[12] Opp. 14-15; *id.* at 1, 12.
[13] Opp. 15 n.4; 18 U.S.C. § 2261(b)(1).
[14] ECF No. 714.
[15] Opp. 12.

## II. ARGUMENT

The opposition measures the motion against the wrong half of the Rule 29 standard, treating one route to acquittal as the only one. The government relies on only part of *United States v. Nevils*, insisting that Mr. Wilson cannot "point[] to evidence so supportive of innocence that no rational trier of fact could find guilt beyond a reasonable doubt." Opp. 10 (quoting *United States v. Nevils*, 598 F.3d 1158, 1169 (9th Cir. 2010) (en banc)). But Mr. Wilson relies on the other route *Nevils* recognizes: "Moreover, the evidence construed in favor of the government may be insufficient to establish every element of the crime," including where there is a "total failure of proof of [a] requisite" element. *Nevils*, 598 F.3d at 1167 (internal quotation marks and citation omitted). Although the opposition quotes that route in its own legal standard, Opp. 9, it then drops it, measuring the motion only against the other. Opp. 10. Mr. Wilson takes the evidence as the government presented it and identifies the essential elements that evidence fails to prove on each count of conviction. Under *Nevils*, that failure requires acquittal.

### A. The Opposition Defends Count Three With an Intent Toward Anyone in the Car, the Formulation the Court Said Would Not Suffice.

The opposition defends Count Three three ways, and none supplies what the instruction required: intent "as to a particular person (for this Count, Saviay'a Robinson)." Jury Instr. No. 26; *accord United States v. Conlan*, 786 F.3d 380, 387 (5th Cir. 2015) (Section 2261A(2) "unambiguously contemplate[s] that the unit of prosecution is the targeted individual, requiring that the defendant act with intent towards a particular 'person'" (quoting *United States v. Shrader*, 675 F.3d 300, 313-14 (4th Cir. 2012))). Its principal argument is that the conspirators intended to kill anyone in the Escalade. Opp. 16. That is the awareness the Court said would not suffice, and the evidence, including the government's own, showed the shooters were aiming at someone else. Its fallback, co-conspirator and accomplice liability, Opp. 16-17, still requires someone who stalked Robinson, and the opposition names no one. And on the

effect element, its only evidence is the gunfire itself, Opp. 2, which is the result Section 2261(b) punishes, not the effect Section 2261A(2) requires. With no evidence of intent toward Robinson and no effect the statute recognizes, Count Three cannot stand.

1. An Intent Toward "Any of Them" Is Not the Focus on a Particular Person the Court Required.

The opposition acknowledges that the conspirators "may not have known Mr. Robinson's name," but says they "knew there were multiple people traveling with Bowman" and placed everyone in the car under surveillance "with the intent to kill any of them." Opp. 16. That is not the showing the Court required. The government had to prove more than that "there might be somebody else in the Escalade with Quando Rondo"; it had to show that "there were particular people," 12RT 17:19-21, a burden the Court called "heavy," *id.* at 17:16, and it had to "convince the jury that their focus was on that particular person," *id.* at 18:6-7. The instruction named that person: Saviay'a Robinson. Jury Instr. No. 26. A focus on Bowman, or on anyone else in the car, does not satisfy Count Three. "Everyone in that car" is not a particular person, and a category is not a focus. The government used the same category in closing, describing the crew as "stalking and hunting Quando Rondo and everyone inside of his vehicle." 13RT 58:15-16. Knowing that "there were multiple people traveling with Bowman," Opp. 16, is knowing that "there might be somebody else in the Escalade." Although the Court's examples of a sufficient focus required no name, 12RT 18:3-4 ("the guy who was wearing certain clothes, or the guy who was in the backseat"), each describes a person the crew had singled out. No one singled out Robinson.

The opposition ignores the evidence that the shooters were aiming at Bowman, not Robinson:

- Jones testified that he fired at the truck without seeing anyone in it, trying to hit Bowman. 8RT 119:20-120:1.
- Hester testified that he did not know who was in the car and meant only to

shoot at the truck. 6RT 157:12-14, 220:9-11.

- Grant testified on the government's direct that Robinson was not the intended target. 8RT 276:9-10.
- Detective Carias agreed that his bureau's bulletin described Robinson as struck in the crossfire, and that he had not testified about any record made before August 19, 2022, "naming Saviay'a Robinson a target of anything by anyone." 4RT 127:15-22.

Every witness who described the shooting put the shooters' aim on Bowman or on the truck. None put it on Robinson. Indeed, the government told the jury that the shooters "unleashed a barrage of gunfire, missing their intended target and killing Saviay'a Robinson." 13RT 27:5-6. Although the opposition also points to the machinegun and the "indiscriminate fire at the gas station," Opp. 16, fire that is indiscriminate is fire without the focus on "that particular person" the Court required. 12RT 18:6-7.

The opposition offers three more grounds, and none shows intent toward Robinson: that the cooperators saw him leave the hotel, that the crew discussed shooting up the truck on the freeway, and that it meant at minimum to intimidate everyone in the car. On the first, the opposition says that two cooperators "saw Bowman, Robinson, and Bowman's other friends leave their hotel." Opp. 7 n.2. The testimony it cites does not name Robinson: Kavon Grant saw "[h]im and his entourage" and "couldn't exactly identify" the others. 9RT 98:18-20. Even assuming the cooperators saw Robinson, seeing a group of people is not an intent to harm any one of them other than Bowman. Jones testified that when the crew saw Bowman's companions without him on the hotel night, there was no talk of shooting them: asked whether there was "talk about shooting those people," he answered, "No." 8RT 84:22-85:3. Had they seen Quando, he testified, "I believe we would have shot him." *Id.* at 85:23-25. Nor was the idea Grant testified he proposed, to "light the truck up" on the freeway, a plan targeted at Robinson. 9RT 105:13-19; *see* Opp. 16. And the fallback,

an intent to "intimidate all of them," Opp. 16, has nothing behind it: the opposition cites no evidence that anyone meant for the men in the Escalade to see the crew, and it concedes that the surveillance "went undetected." Opp. 15. A crew that avoids being seen is not trying to intimidate the people it hides from.

2. Conspiracy and Aiding and Abetting Liability Require Someone Who Stalked Robinson, and the Opposition Names No One.

The opposition's fallback, co-conspirator and accomplice liability, is equally unavailing. Opp. 16-17. Both require that someone committed the offense Count Three charged. The Court required proof that "a person named in Count Three of the indictment committed the crime of stalking Saviay'a Robinson." Jury Instr. No. 30; *see Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946). The opposition says only that "any one of the conspirators" could have possessed the required intent. Opp. 17. What could have been is not evidence of what was. Of the three shooters the opposition names, the two who testified said they fired at the truck, one of them trying to hit Bowman, and it points to nothing showing that the third intended anything toward Robinson. Opp. 10; 8RT 119:20-120:1; 6RT 157:12-14.

The opposition then treats foreseeability as if it could supply the crime itself. It argues that "the stalking of Bowman's entourage in the Escalade (including Mr. Robinson) fell within the scope of the unlawful agreement and could reasonably have been foreseen." Opp. 17. The government made the same move at trial, telling the jury that stalking Robinson "was a foreseeable and natural consequence from the conspiracy" and explaining that "when they opened fire, they would kill somebody else in the vehicle." 13RT 35:3-4, 35:9-10. But foreseeability extends Mr. Wilson's liability only to a stalking a co-conspirator actually committed, and the opposition identifies no one who stalked Robinson. A foreseeable death is not a stalking, and "somebody else in the vehicle" is the bare awareness the Court ruled out. Nor can the opposition fill that gap by recasting the victim. Count Three did not, and under the statute could not, charge the stalking of an entourage. *See Conlan*, 786 F.3d at 387. It

charged the stalking of Saviay'a Robinson, and absent proof that any co-conspirator committed that offense, co-conspirator liability cannot sustain the conviction.

Aiding and abetting fails for the same reason. It required "knowledge of the specific crime charged . . . for Count Three, the stalking of Saviay'a Robinson," acquired while Mr. Wilson "still had a realistic opportunity to withdraw from the crime." Jury Instr. No. 28. "Advance knowledge . . . of conduct directed at some other person, is not sufficient." *Id.* The only target the government's evidence identifies is Bowman. 8RT 276:9-12. No evidence shows that Mr. Wilson knew, before or during the shooting, that anyone was stalking Robinson, and nothing said or done in the moment turned anyone's attention to him.

3. Nothing Before the Gunfire Reached Robinson, and Bowman Is Not a Relative Whose Distress the Statute Counts.

The opposition identifies no effect of the course of conduct on Robinson. It points instead to the gunfire itself and what followed it. Opp. 2. That is the harm Section 2261(b) punishes as a result. It is not the effect Section 2261A(2) makes an element, which must come from the course of conduct. The government made the same substitution to the jury, telling it that Robinson's death satisfied the effect element on Count Three. 13RT 34:11-13.

The opposition rests the effect element for Robinson on fear and distress that came from the shooting, including Bowman's reaction to Robinson's injuries. Opp. 2. Neither route reaches Robinson. On reasonable fear, the opposition concedes that the men in the Escalade "only became aware of the course of conduct when three of the conspirators ambushed them at a gas station," Opp. 12, so no fear "reasonable under the circumstances known to Saviay'a Robinson" came from the course of conduct. Jury Instr. No. 26. On emotional distress, Bowman's reaction is not evidence on the element at all. As instructed, both alternatives turned on the effect on Robinson himself: a course of conduct that "placed Saviay'a Robinson in reasonable fear" or that caused, attempted to cause, or would be reasonably expected to cause "substantial

emotional distress to Saviay'a Robinson." Jury Instr. No. 26. Nor would the statute count Bowman's reaction. His distress matters only if he is Robinson's immediate family member, spouse, or intimate partner. 18 U.S.C. § 2261A(1)(A)(i)-(iii), (2)(B). The opposition never says he is, and the record would not support it if it did. The only testimony describing the relationship consists of an Instagram post Jones recounted, saying that Bowman's "cousin was killed," 8RT 131:15-16, and Hester's passing reference to "the dude cousin," 6RT 62:8-9. A cousin is not among the relatives Section 115(c)(2)(A) lists, so he qualifies only as "any other person living in his household and related to him by blood or marriage," *id.* § 115(c)(2)(B), and no witness testified that Bowman and Robinson shared a household. Because the evidence shows no intent toward Robinson, no one who stalked him, and no effect on him from the course of conduct, the Court must enter a judgment of acquittal on Count Three.

### B. The Opposition Concedes That the Course of Conduct Went Undetected, and None of Its Answers Overcomes That Concession.

Count Two fails on a fact the opposition itself supplies: the conspirators' "days-long surveillance and following of Bowman went undetected." Opp. 15. Elsewhere it describes that conduct as "clandestine." Opp. 12. And it acknowledges that Bowman and Robinson "only became aware of the course of conduct when three of the conspirators ambushed them at a gas station." Opp. 12. Despite those concessions, the opposition insists that none of this "undermine[s] the jury's . . . verdict." Opp. 15.

It offers three arguments to save the convictions, and none holds up. It recasts the motion as requiring awareness of each act, which the motion does not argue. It reads the attempt language of the emotional-distress provision into the reasonable-fear provision, which requires that Bowman himself was afraid. And it argues the course of conduct attempted to cause, caused, or would reasonably be expected to cause substantial emotional distress, though it identifies nothing but the shooting. The agreement it describes for Count One has no effect element at all. A stalking conviction cannot rest on the shooting alone, and Counts One and Two cannot stand.

1. Mr. Wilson Does Not Argue That Bowman Had to Know Each Act; He Argues That the Effect Must Come From the Course of Conduct, Not the Shooting That Ended It.

The opposition says that Mr. Wilson's argument "ignores the text of the stalking statute, which does not require that a victim be aware of each act." Opp. 11. Not so. Far from arguing that Bowman had to know of each act, the motion acknowledged that the emotional-distress route "relieves the government of proving what Bowman knew." Mot. 13. What the motion argued is that "the pattern must produce the fear or the distress," *id.* at 10, and that the shooting that ended the pattern cannot supply it, *id.* at 12. A course of conduct is "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2). The shooting is one act. An effect that comes only from the shooting does not come from the course of conduct, and it does not satisfy the statute.

The out-of-circuit district court decision the opposition cites, *United States v. Elkins*, does not support its position. Opp. 11; *United States v. Elkins*, 725 F. Supp. 3d 570 (N.D. Tex. 2024), *aff'd in part, vacated in part*, 161 F.4th 899 (5th Cir. 2025), *cert. denied*, No. 25-1061 (U.S. Oct. 5, 2026). Ruling on a motion to dismiss, the court held that no single use of an interstate facility must be known to the victim, and in the same paragraph explained why: "A defendant's 'course of conduct' against the victim is what must 'place[] that person in reasonable fear of . . . death . . . or serious bodily injury' or 'cause, attempt[] to cause, or . . . be reasonably expected to cause substantial emotional distress.'" *Id.* at 574. That is Mr. Wilson's point: the course of conduct must produce the fear or distress, and here the only act that reached anyone in the Escalade was a single one, the shooting.

On the government's reading, any killing planned by phone or reached by car is a federal stalking. The opposition itself grounds the offense in the use of "cars, cell phones, and airplanes." Opp. 12. Although Congress wrote a stalking statute, that reading turns Section 2261A into a *de facto* federal murder statute, reaching nearly any

homicide planned on a phone and punishable by life whenever death results. 18 U.S.C. § 2261(b)(1). The Supreme Court rejected a similarly sweeping interpretation of the aggravated-identity-theft statute, explaining that the government's reading would "sweep in the hour-inflating lawyer, the steak-switching waiter." *Dubin v. United States*, 599 U.S. 110, 131 (2023).

### 2. The Reasonable-Fear Route Has No Attempt Clause, and Bowman Could Not Fear a Following the Opposition Concedes Went Undetected.

The opposition argues that because "the statute criminalizes attempt," it "does not require the victim be aware of each, or any, act constituting the defendant's 'course of conduct.'" Opp. 11. But the attempt language appears only in the emotional-distress provision. 18 U.S.C. § 2261A(2)(B). The reasonable-fear provision requires a course of conduct that actually "places that person in reasonable fear," *id.* § 2261A(2)(A), and the government agreed that the instruction saying so was "an accurate statement of the law," 12RT 12:6-7. Although *United States v. Macias-Valencia*, 510 F.3d 1012, 1014 (9th Cir. 2007), confirms that "conspiracy and attempt are inchoate crimes that do not require completion of the criminal objective," it is a drug case that says nothing about Section 2261A, and nothing in it carries subsection (B)'s attempt language into the reasonable-fear provision of subsection (A). Under subsection (A), the government had to prove that the course of conduct made Bowman afraid, and it did not.

On the reasonable-fear route, the opposition's own concession ends the inquiry. A course of conduct that "went undetected," Opp. 15, placed no one in fear. The only fear the opposition identifies is the reaction to the gunfire: masked men firing, the Escalade fleeing, Bowman's reaction as first responders removed Robinson. *Id.* at 13-14. That evidence concerns the shooting, not the course of conduct. And the 911 caller's fear, *id.* at 14, is not Bowman's; the statute measures the fear of "that person." 18 U.S.C. § 2261A(2)(A).

Long before the opposition conceded it, the government told the jury that no one in the Escalade knew. It opened by saying that "[w]hat Quando Rondo and Saviay'a

Robinson didn't know was that they were being followed," 3RT 12:16-17, and closed by saying that the men in the Escalade "didn't know these defendants were right behind them," 13RT 26:1. Bowman could not fear a following he did not know about. Without that fear, the reasonable-fear route fails.

### 3. All Three of the Government's Emotional-Distress Theories Rest on the Single Act of the Shooting, Which Is Legally Insufficient.

The opposition invokes all three routes of the emotional-distress provision: a course of conduct that "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress." 18 U.S.C. § 2261A(2)(B); *see* Opp. 14-15. On each, it offers the same thing: the shooting. The shooting was not an attempt to cause distress, and any distress traced only to the shooting does not come from the course of conduct. None of the three routes can sustain Count Two.

The opposition says the gunfire at the gas station "attempted to cause Bowman substantial emotional distress." Opp. 15. An attempt requires that the defendant "intended to commit the completed offense" and took "an 'overt act' that constitutes a 'substantial step' toward completing the offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 106-07 (2007). The opposition shows neither. For intent, it offers an intent to kill, reasoning that death is "a result that plainly would cause reasonable fear of death or substantial emotional distress to the victim." Opp. 14-15. But an attempt to cause death is not an attempt to cause emotional distress; death is the result Section 2261(b)(1) punishes separately, with a maximum of life. The opposition takes the enhancement and calls it the element. For the step, it offers the gunfire itself, which it calls "an attempted murder." *Id.* at 15. An attempted murder is not a step toward causing distress.

Everything before the gunfire ran counter to an attempt to cause emotional distress. On the government's own evidence, four times the crew got into position, and four times it stood down: outside the hotel because of "police steady riding," 5RT 305:15-22; the next morning because "it was so many random people right there," 6RT

8:16-21; at the dispensary because of "an armed security," *id.* at 17:14-19; and at the clothing store, where the following car passed the Escalade three times and no one got out, GX 13 at 44-47. Each time, the crew passed up a chance to be noticed. The opposition recounts some of those episodes, Opp. 6-7, but never explains how standing down unseen was a step toward causing Bowman distress. Each was a step away from it.

On the other two routes, the opposition says the course of conduct "caused [Bowman] substantial emotional distress," Opp. 15, and would reasonably be expected to, *id.* at 14-15. On both, the only distress it identifies, caused or expected, is distress from the shooting. *Id.* at 13-15. Though the government invokes *Uhlenbrock*, the course of conduct there was built to be found. Opp. 14-15; *United States v. Uhlenbrock*, 125 F.4th 217, 227 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2853 (2025). The Fifth Circuit held that a jury could convict on expected distress "even if [the conduct] did not cause such distress," and the course of conduct there was what made distress expected: the defendant posted the victim's intimate images under "her maiden name," "told readers her occupation and employer," and "invited men to look for her when they flew." 125 F.4th at 227. "People could link the posts to [her]." *Id.* Here, by the opposition's own account, it "went undetected." Opp. 15. Expected distress is measured by what "a reasonable person in the same or similar circumstances as the victim would suffer . . . as a result of the intended course of conduct." Jury Instr. No. 21. Although the standard does not require proof that Bowman was aware of the conduct, it does require conduct that would reasonably be expected to cause distress to someone in his circumstances. Even though the opposition concedes that Bowman and Robinson "only became aware of the course of conduct when three of the conspirators ambushed them at a gas station," Opp. 12, it asks the Court to find that the same unseen conduct would reasonably be expected to cause Bowman distress, *id.* at 14-15. That conduct was designed never to be seen, and it never was. It could not reasonably be expected to distress the person it was hidden from, and whatever distress Bowman

suffered came from the shooting, not the course of conduct. Neither route survives.

4. Count One Fails Because an Agreement to Follow Bowman Unseen Is Not an Agreement to Place Him in Fear or Cause Him Distress.

The opposition defends Count One without identifying any evidence of an agreement to cause Bowman fear or distress, as opposed to the secret agreement to kill that the opposition describes. *See* Opp. 15. That omission is dispositive. Each conspirator "must have specifically intended that *some conspirator* commit each element of the substantive offense." *Ocasio v. United States*, 578 U.S. 282, 292 (2016). The only agreement the opposition describes is one to "use cars, cell phones, and airplanes to find and kill Bowman," Opp. 12, and its paraphrase of the statute leaves out the effect element altogether, *id.* at 12. Its answer, that death "plainly would cause" fear or distress, *id.* at 14-15, fails here as it does on Count Two. An intent to cause death is not an intent to cause emotional distress, and the agreement the opposition describes contemplated only one act that would ever reach Bowman: the shooting. The Court must enter judgments of acquittal on Counts One and Two.

**C. The Gunfire Cannot Both Complete the Stalking and Cause the Death That Results From It.**

The opposition concedes that nothing before the gunfire reached Bowman or Robinson. Opp. 12, 15. That concession leaves only the gunfire to complete the stalking, and the gunfire is also what killed Robinson. Even though the enhancement applies only "if death of the victim results" from the stalking, 18 U.S.C. § 2261(b)(1), the government would have the Court find a stalking in the shooting and then find that Robinson's death resulted from it. A result follows the offense; it cannot be the act that completes it. Treating the shooting as both the stalking and its result "collapses the enhancement into the enhanced." *Cf. Dubin*, 599 U.S. at 128 (rejecting the government's reading of the aggravated identity theft enhancement, 18 U.S.C. § 1028A(a)(1)).

The opposition answers in a footnote, recasting the argument as a jury-finding point under *Apprendi*[16] and declaring that it "has no basis in the text of the statute." Opp. 15 n.4. The motion makes no *Apprendi* argument; it argues the text. Mot. 21. The enhancement turns on whether death "results" from the stalking, while elsewhere in the same subsection it reached the offender who uses a dangerous weapon "during the offense." 18 U.S.C. § 2261(b)(1), (3). The footnote addresses neither word. A death that results from a stalking must follow it, and the same gunfire cannot be both the offense and its consequence. The government's own authority confirms that a stalking is a pattern, not a single act: "[t]he focus is not on the individual acts as separate, distinct events, but instead on the purpose and scope of the defendants' pattern of stalking conduct as a whole." *United States v. Gonzalez*, 905 F.3d 165, 186 (3d Cir. 2018). In *Gonzalez* that pattern was "a years-long conspiracy" to harass the victim, "which ultimately resulted in her death." *Id.* at 174. That is a stalking from which death results. The Court must set aside the death-results finding on Count Three.

## III. CONCLUSION

For the foregoing reasons, Mr. Wilson respectfully requests that the Court enter judgments of acquittal on Counts One, Two, and Three or, in the alternative, set aside the death-results finding on Count Three.

Respectfully submitted,

Dated: October 21, 2026

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH
Attorney for Deandre Wilson

---

[16] *Apprendi v. New Jersey*, 530 U.S. 466 (2000)

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for defendant Deandre Wilson, certifies that this brief contains 4,767 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 21, 2026

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH